## NATIONAL LABOR RELATIONS BOARD v. TAYLOR–COLQUITT CO. et al.

### No. 5101.

Circuit Court of Appeals, Fourth Circuit.

Nov. 8, 1943.

Fannie M. Boyls, Atty., National Labor Relations Board, of Washington, D. C. (Robert B. Watts, General Counsel; Ernest A. Gross, Associate Gen. Counsel; Howard Lichtenstein, Asst. Gen. Counsel, and Ida Klaus and Dominick L. Manoli, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

C. Erskine Daniel, of Spartanburg, S. Car. (L. W. Perrin, of Spartanburg, S. Car., on the brief), for respondent Taylor-Colquitt Co.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition of the National Labor Relations Board to enforce an order against the Taylor-Colquitt Company, a corporation, and Mrs. Elma LaBoone, the respondents.

The Taylor-Colquitt Company is a South Carolina corporation, engaged in the processing of lumber at Spartanburg, in that State.

Toward the end of January 1942, the United Mine Workers of America, District 50, herein called the Union, sought to organize the employees of the respondent company and the effort with one exception was only successful among the negro employees. A number of meetings were held and efforts were made by respondent Mrs. LaBoone, who was the wife of a foreman in charge of the company's lumber yard, and various employees including supervisors and foremen to break up these meetings and interfere with the organization of the Union.

Mrs. LaBoone was especially active in the attempts to break up the meetings and prevent the organization of the Union and was aided in her effort by, among others, one Carl Collins, a supervisory employee assistant to her husband.

On February 26, 1942, the Union filed charges with the Board alleging that the company had engaged in unfair labor practices by the acts of its supervisors and by various evictions and discharges of its employees. After negotiations between the respondent company, the Union, and a representative of the Board, the parties entered into a settlement agreement dated March 26, 1942. This agreement was approved by the Acting Regional Director of the Board on March 28, 1942.

Notwithstanding this settlement agreement the Union alleged that the unfair labor practices continued.

On May 15, after negotiations, an election agreement was approved by the Acting Regional Director providing for an election by secret ballot on May 22 and a list of those employees eligible to vote in the election was agreed upon. The Union charged that the company through its supervisory employees and by encouraging respondent, Mrs. LaBoone, interfered with the election by threats and violence. The election was held but the Board and the Union, because they felt that it had not been fairly conducted, refused to accept whatever result was reached and the ballots were never counted but were deposited in a Spartanburg bank.

The Union then filed an amended charge before the Board against the respondents, hearings were held at Spartanburg, a number of witnesses were examined and the Trial Examiner made his report to the Board, finding against the respondents. The respondents filed exceptions to the Examiner's report and a hearing was had before the Board in Washington, D. C., on October 27, 1942, at which hearing the respondents were represented by counsel who presented argument to the Board.

The Board then made its findings of fact and set out its conclusions of law, sustaining the Trial Examiner, and made the order here sought to be enforced.

It is admitted that the respondent company is engaged in interstate commerce and comes under the provisions of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

It is contended on behalf of the respondents (1) that Mrs. LaBoone was not in the employ of the company and that it had no control over her actions and was not responsible for them; (2) that evidence of unfair labor practices before the settlement agreement was reached should not be considered; (3) that it did not interfere in any way with the election and (4) that it had not been guilty of any unfair labor practices after the settlement agreement was entered into.

As to the first contention we are of the opinion that the Board reached the right conclusion as to respondent Mrs. LaBoone. As wife of the leading foreman of the company her acts were undoubtedly influenced by that relationship. The officers of the company must have known of her conduct and there is no showing that any real effort was made in good faith to stop her activities which were violent, threatening, and unlawful and it is apparent from the evidence that through her the respondent company endeavored to influence its employees. The company tacitly made her its agent and she was within the meaning of Sec. 2(2) of the Labor Act an employer.

It is obvious and it is reasonable to hold that the interpretation of the Act makes one who aids the immediate employer in contravening the statute an employer also. N.L.R.B. v. Grower-Shipper Vegetable Ass'n, 9 Cir., 122 F.2d 368. Such an interpretation is an adoption of the established common-law principle that an agent is accountable for his own illegal acts even though performed under conditions imposing liability on his principal. Sloan Shipyards Corp. et al. v. United States Shipping Board et al., 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762. It cannot be doubted that the company "acquiesced in, ratified, and approved" of Mrs. LaBoone's conduct and that they were acting together in the interest of the respondent company. The company is also responsible for the action of its supervisory employees who worked with Mrs. LaBoone. International Ass'n of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L. Ed. 309; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368.

It is not necessary to discuss the second contention of the respondents because of the conclusion reached by us as to the

unfair labor practices after the settlement agreement was made.

As to the third contention of the respondents we are of the opinion that there is substantial evidence to support the finding of the Board that the company through acquiescence in the actions of Mrs. LaBoone and some of its supervisory employees did interfere in the election by permitting acts which it could have prevented, such as threats against the negro-employees, distribution of circulars attacking the Union, and efforts to unfairly influence employees in voting.

As to the fourth contention we are of the opinion that in the ways set out in the findings of the Board both respondents were guilty of unfair labor practices after the settlement agreement was made. There is ample evidence to support the findings of the Board as to Ardean Rice, Arthur Jeter, Warren Atchison, Willis Means and V. L. Blackwell.

The findings of the Board are all supported by the evidence and the order made by it will be enforced.

Enforced.