NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

OZARK HARDWOOD COMPANY,
Respondent.

No. 14339.

United States Court of Appeals
Eighth Circuit.

Aug. 2, 1960.

Thomas J. McDermott, Associate Gen. Counsel, and William J. Avrutis, Washington, D. C., for National Labor Relations Board.

J. O. Hichew, St. Louis, Mo., for Ozark Hardwood Mfg. Co.

Before JOHNSEN, Chief Judge, and SANBORN and WOODROUGH, Circuit Judges.

JOHNSEN, Chief Judge.

By decision and order dated November 3, 1950, the National Labor Relations Board directed Ozark Hardwood Company, of Clarksville, Arkansas, and its "successors and assigns", to offer reinstatement to 25 employees, who had been discharged on May 16, 1949, and to make them whole (as well as two others similarly discharged but later reinstated) for any loss of earnings suffered by them between the time of their discharge and the date of offer to reinstate them. 91 N.L.R.B. 1443.

On March 7, 1952, on petition of the Board, we decreed enforcement of the Board's order, and at the same time made denial of Ozark Hardwood Company's request to have the words "successors and assigns" stricken from the Board's order. N. L. R. B. v. Ozark Hardwood Co., 8 Cir., 194 F.2d 963.

Thereafter, on March 11, 1953, we granted a motion on the part of the Board, for leave to conduct a supplemental proceeding to determine whether, within the scope of the term "successor" contained in the Board's order and our enforcement decree, there existed such a relationship between Ozark Hardwood Manufacturing Company and Ozark Hardwood Company as in National Labor Relations Act realities to make Hardwood Manufacturing Co. subject to a joint responsibility with Hardwood Co. for fulfillment of the Board's remedial requirements against Hardwood Co.

On December 19, 1957, (with a correction added on September 30, 1958), after proceedings participated in by both Hardwood Mfg. Co. and Hardwood Co., the Board made a determination and issued a supplemental decision and order, 119 N.L.R.B. No. 129, finding that Hardwood Mfg. Co. was such a "successor" as, within the realities of the Act, to have a responsibility for the remedial requirements made against Hardwood Co. by the Board's 1950 order.

The Board also engaged in making computations and findings of the amounts of net back pay due the 27 discriminatees, for the period from May 16, 1949, to March 31, 1954, in an amount of over $58,000, with there being left subject to subsequent computation by the Board the amounts of accumulated back pay for the several further years which had then elapsed—and which now aggregate more than 6 years from the time to which the Board's computation was made. The Board directed that Hardwood Mfg. Co. should make payment of the determined amounts to the discharged employees.

A motion has since been filed by the Board for the entry of a supplemental decree on its decision and order. Objection to the motion being entertained or granted is made by Hardwood Mfg. Co., on the grounds, in substance, (1) that the court has no jurisdiction to enter such a supplemental decree; (2) that the evidence does not warrant a finding that Hardwood Mfg. Co. was a "successor" of Hardwood Co., within the scope which that term legally could have in the decree; and (3) that the amounts of back pay allowed by the Board were unrealistic, unfair, arbitrary and unwarranted, both as a matter of the formula used for arriving at the computations, and in relation to the Board's refusal to make cutoffs of back pay in the circumstances shown to exist as to particular individuals and situations.

I.

The objection urged to the court's right to entertain the motion for a supplemental decree rests on procedural grounds. The contention is that the reach attempted to be made against Hardwood Mfg. Co. is one in which the Board may only engage through a use of

**4**

a formal petition for enforcement of orders made by it and the processes relating thereto, as provided for in 29 U.S. C.A. § 160(e).

This overlooks the fact, we think, that what is here involved is not a primary determination and order of labor responsibility under the Act, but an ancillary reach undertaken to be made under the scope of our enforcement decree; authorized by us to be engaged in for purposes of the decree's effectuation; and intended to have its operation extend only within the limits of the decree, under proper legal and equitable concept as related to the National Labor Relations Act field.

■ We had simply authorized the Board to make an auxiliary examination and determination in connection with the decree, by a development of the facts, and with an opportunity to both Hardwood Co. and Hardwood Mfg. Co. to be heard, on whether the origin, nature, interests, activity, conduct and other elements of relationship between the two corporations were such as, in the context of the labor-wrongs situation, to cause Hardwood Mfg. Co. to fall within the term "successors and assigns", and so to make it subject to a direct application of the decree against it.

■ This was an inquiry in which the court could itself have ancillarily engaged, in attempted effectuation of its decree, by means of a contempt citation and a show-cause order. Equally would the court be at liberty, in our opinion, to call upon or to permit the Board to make facilitating examination, determination and record as a basis for judicial consideration of the propriety and need of a supplemental decree. The expression of the Supreme Court in Southport Petroleum Co. v. N. L. R. B., 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718, would seem to be sufficiently indicative here: "Whether there was a bona fide discontinuance and a true change of ownership * * * or merely a disguised continuance of the old employer * * * is a question of fact properly to be resolved by the Board on direct resort to it, or by the court if contempt proceedings are instituted".

We are accordingly unable to see any violation of the provisions of the Act, or of any other possible element of procedural due process, in permitting such a reference to the Board to be made and the result thereof to be brought before the court for consideration and resolution, through the procedure of a motion for a supplemental decree, instead of by the form of proceedings prescribed by 29 U.S.C.A. § 160(e) for reviewing and enforcing primary orders of the Board. It may be repeated that what was being engaged in through the motion for supplemental decree was not an attempt to subject Hardwood Mfg. Co. to primary liability for unfair labor practices committed by it, but to ascertain whether it had a derived responsibility for the remedial relief decreed as to the existing wrongs, from there having been such elements of structure, relationship or conduct on the part of Hardwood Mfg. Co. as to have brought itself within the equitable scope of the decree.

The objection made to jurisdiction thus is without merit, and it is overruled.

## II.

■ On the second contention of Hardwood Mfg. Co. referred to above, we agree with the Board that the evidence entitled it to be found that Hardwood Mfg. Co. constituted such a "successor" of Hardwood Co., in relation to the labor-wrongs situation, as to come within the scope of the enforcement decree.

The term "successors and assigns" in an enforcement order or decree has been held to have no greater scope or reach than that existing generally under the language of Rule 65(d) of the Rules of Civil Procedure, 28 U.S.C.A., which declares an injunction to be "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise". Regal

Knitwear Co. v. N. L. R. B., 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661.

Such an active concert or participation may, for purposes of remedial responsibility, properly be found to exist in an unfair-labor-practices situation, as to a business which constitutes "merely a disguised continuance of the old employer". Southport Petroleum Co., supra, 315 U.S. at page 106, 62 S.Ct. at page 456. Where unfair labor practices have been committed, the creation of another structure by the owners of the business, for the purpose of continuing its operations but of frustrating the remedial responsibility for the wrongs committed, will generally amount to a disguised continuance of the old employer.

■ But the phrase can have a wider scope than this. In National Labor Relations Act perspective, it is also possible for a business to have the significance and effect of a disguised continuance of the old employer, without ownership identity necessarily existing, where such business allows itself to become a substitute in carrying on the operations, or some of them, of the old employer, under a relationship serving to benefit the latter's owners and intended as one of cooperation with them in evading the consequences of the unfair labor practices committed.

In different terminology, such a situation may be capable of being regarded as one of agency, within the broad concept entitled to be applied to the definition in 29 U.S.C.A. § 152(2), that "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly * * *", or, in more conventional equitable phrase, it may be denominated, from participation against the operation of the decree, as constituting a direct instrument of evasion. Cf. N. L. R. B. v. Taylor-Colquitt Co., 4 Cir., 140 F.2d 92, 93; N. L. R. B. v. Birdsall-Stockdale Motor Co., 10 Cir., 208 F.2d 234, 237, 46 A.L.R.2d 587.

■ The form of expression or characterization used is not of particular importance, for language of reach in an enforcement order or decree will not be given a legalistic construction but will be accorded application pratically on the basis of the realities of the Act. Thus, here, whether on the theory of alter ego, or on the theory of instrument of evasion from relationship with the employer or its owners and cooperation as to the labor situation—which the Board viewed as being alternatively supportable on the evidence—the term "successor" provided ample scope for a reach through the application of a supplemental decree. On either basis, the reach against an alleged successor, as a disguised continuance of the old employer in the realities of the existing labor situation, "depends on an appraisal of * * * relations and behavior and not upon mere construction of terms of the order". Regal Knitwear Co., supra, 324 U.S. at page 15, 65 S.Ct. at page 481.

On the record here considered in its whole, the Board could properly make the appraisal that the facts, circumstances and warranted inferences entitled it to be found that Hardwood Mfg. Co., whether on its creation, ownership and business, or from its role of substituting to carry on the enterprise or operations of Hardwood Co., in the relations involved as to the owners and the purpose intended of enabling the latter to evade the consequences of the labor wrongs committed, came within the scope of the enforcement order and decree, and that this reach was entitled to be made definitive against it by means of a supplemental decree.

Only some of the general facts need be set out here in indication.

Hardwood Co. had only three stockholders—Knight, Jones and Mills. The stockholders of Hardwood Mfg. Co. consisted of Knight, Jones and Mills' wife. A complaint as to the 27 discharges involved was issued against Hardwood Co. in January, 1950. Four days thereafter, Knight, Jones and Mills took a mortgage on the plant of Hardwood Co., to secure some notes held by them for monies which they had advanced to the corporation. After the Board's decision and

order in November, 1950, Mills transferred the secured note held by him to his wife, claiming in this proceeding that this had been done in adjustment of some financial relations between them. Mills was the plant manager of Hardwood Co. and was the person most immediately involved in the unfair labor practices which had been committed.

After the trial examiner had filed his intermediate report, Hardwood Co. made default on the payment due on a second-mortgage note of $15,000 held by a local bank. Before the filing of the Board's petition for enforcement in this court, foreclosure proceedings were instituted by the bank against Hardwood's plant, and Knight, Jones and Mrs. Mills entered a cross-complaint for foreclosure of their third mortgage. There was a first mortgage on the plant in the amount of $188,453.69, on which Hardwood Co. had also passed a payment after its labor difficulties arose, but there was no foreclosure instituted on this mortgage.

At the foreclosure sale, Knight, Jones and Mrs. Mills bid in the plant, with the amount of the bid to be credited on their judgments, and with payment of the bank's judgment to be made by them in cash, which they did upon confirmation of the sale. Meanwhile, they had engaged in incorporating Hardwood Mfg. Co., with each of them paying in $5,000 as capital and with Mrs. Mills' payment being raised on a promissory note signed by both her husband and herself. Two days after the confirmation of the foreclosure sale, the three purchasers conveyed the plant to Hardwood Mfg. Co., with vendor's-lien notes being taken from the new corporation in payment.

Hardwood Co. had continued to operate the plant until a few days before the foreclosure sale, when it purported to terminate the services of all its 117 employees, except a small shutdown crew. Hardwood Mfg. Co. re-opened the plant within 10 days thereafter, taking on 119 employees, all of whom except 5 consisted of the previous employees of Hardwood Co. The operations in which Hardwood Co. had been engaged were immediately resumed. The orders of Hardwood Co. which remained on hand were routinely filled. Jones was made manager instead of Mills, but Mills was present at the plant liquidating the accounts of Hardwood Co. and advising as to the operations of Hardwood Mfg. Co. Within a few months, he was returned to the position of general manager of the plant and its operations.

Hardwood Mfg. Co. assumed the warehouse-receipts obligations of Hardwood Co. as to inventory, and also made assumption of the first mortgage indebtedness on the plant. As noted, it resumed the operations of the plant on their previous basis, but it attempted to increase the plant's volume of business and number of customers through the production of further lines of specialty products. These added operations resulted in variations and adaptations being made in the tasks of employees and in some of the things formerly produced by Hardwood Co. being gradually dropped.

It is contended by Hardwood Mfg. Co. that the new set-up, the changes, the expansion, etc. involved, required a holding that it was a distinct and different enterprise from Hardwood Co., which had no responsibility as to the labor wrongs committed by Hardwood Co. The Board regarded the things which had occurred as representing a scheme and attempt by Knight, Jones and Mills to get out from under the labor-wrongs difficulties, while preserving for themselves (or in the family relationship as to Mills) the business in which they had been engaged.

As to the changes, additions, expenditures, task-adaptations, etc., which came to exist, the Board made the appraisal that these amounted essentially to evolutions, extensions and developments merely, such as could characteristically be expected to occur in the particular business field and in the economic era involved, without having so changed the nature of the enterprise and its job situations as to cause it to be outside the bounds of legitimate remedial area in respect to the discriminatees. The

Board was warranted in concluding that Hardwood Mfg. Co. was within the remedial area of the labor-wrongs situation which had been caused to exist.

In its consideration of the right to view Hardwood Mfg. Co. either as an alter ego or as an instrument of evasion otherwise, the Board found evaluative substance in the circumstances of the foreclosure, among other elements. It concluded, as the evidence warranted it in doing, that the foreclosure was an initial part of a scheme engineered by Knight, Jones and the Mills to escape the consequences of the labor-wrongs situation. The Board did not question the validity and effect, under Arkansas law, of the foreclosure as such. It did, however, find that Knight, Jones and Mills had purposely precipitated the institution of the proceedings, by making an unnecessary default on the bank's second mortgage, as a means of enabling them to effect a transfer of the plant and its operations to Hardwood Mfg. Co., and that the latter had been set up for this specific purpose. It further warrantedly found that these things would not have been so done, except for the labor difficulties into which Hardwood Co. had gotten, and except for the desire of Knight, Jones and Mills to escape the consequences thereof.

It is not necessary to detail all the elements which lend rational, and indeed persuasive, support to these inferences. As previously stated, the Board was entitled to find that such identity of business structure and interest, such continuance of industrial operations and job situations, and such correspondence of other realities existed as properly to constitute Hardwood Mfg. Co. an alter ego in the situation. Or alternatively, the Board could also otherwise brand Hardwood Mfg. Co. as representing an instrument of cooperation and evasion as to the labor-wrongs situation, in its substitution to carry on the operations of Hardwood Co., under the ties of relations and purposes involved.

We thus can see no basis, within the proper scope of our review function, to hold that Hardwood Mfg. Co. was not entitled to be regarded as representing a "successor" of Hardwood Co., in such sense as to give the original decree operativeness against it and as to permit a supplemental decree to be entered to make this definitive on the record.

### III.

This leaves for consideration only the matter of the Board's dealing with the question of back pay.

▆▆ As to the formula for arriving at back-pay rates or amounts, which the Board may deem it necessary to devise in a particular situation, our inquiry may ordinarily go no further than to be satisfied that the method selected cannot be declared to be arbitrary or unreasonable in the circumstances involved. Cf. Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 199–200, 61 S.Ct. 845, 85 L.Ed. 1271; N. L. R. B. v. Kartarik, Inc., 8 Cir., 227 F.2d 190, 193; N. L. R. B. v. Deena Artware, Inc., 6 Cir., 228 F.2d 871, 872.

Here, we cannot say, as Hardwood Mfg. Co. would have us do, that the general formula used was itself unfair, unrealistic, or otherwise unwarranted legally. It can serve no useful purpose for us to repeat in demonstration the exposition and discussion which the Board's order and decision contain.

As to the amounts of the back-pay allowances made, however, we do not feel that we should be asked to give present enforcement approval, in the setting in which the question stands before us. As previously noted, the Board computed back pay for the period from 1949 to 1954. When its order was made, there was an additional period of almost four years which had elapsed, with which the Board did not see fit to deal, except to manifest its intention to treat this on the same basis hereafter. Two more years have gone by, as the situation is presented to us. Thus, there exists at this time a total of 11 years, in respect to the whole of which the Board apparently intends to make automatic allowance, except as some status other than

that involved in its present determination may have developed, without further consideration of the question of remedialness in relation to the Act.

■ We entertain no doubt as to the Board's authority to compute and allow back pay for a partial period in an appropriate situation, where compliance is not promptly made with such a general remedial requirement after the entry of an enforcement decree. Nor would we have any hesitancy in granting immediate enforcement of most of the allowances here made, except that it seems to us that the Board has used a concept as to some of the discriminatees which we do not believe it is at liberty to project into the six additional years that now exist, and which, if so projected, would leave the Board's allowances to these discriminatees questionable in their whole as to the principles underlying them.

Thus, in one instance here, the Board has made an allowance of $8,282.90, down to the date of its determination, in favor of a discriminatee, shown to have been senile and later adjudged to be incompetent. The Board rejected the employer's contention that the services of this employee naturally and necessarily would have been terminated within six months at least after the date of his discriminatory discharge. The trial examiner, while recognizing that no other employer would take on the employee because of his condition, made the declaration as to his back-pay that "consequently he has suffered greater economic distress than other claimants".

In the case of another employee, who had passed the age of 70, and who appeared for several years to have settled down in a state of retirement after his discharge, the Board made an award of $6,088.60 to the date of its determination.

There are other situations which similarly impress that the Board has granted full back-pay allowances to employees who have harbored no serious concern about useful pursuit or livelihood, after the lapse of a year or two from their discharge, but have rather chosen to tread the path of small-town ease and leisure.

We do not now pass judgment on these various situations. We do not want or feel able to say whether what the Board has done is remedial in its concept or extent, until we can see it in its relationship to the whole of the ten years which have elapsed, and as part of the Board's overall treatment of the general situation. If projected through the ten year period, some of the situations would tend to impress as being more in the nature of social security benefits than remedial and realistic back-pay losses.

The motion for a supplemental decree will accordingly be granted in respect to the Board's determination that Hardwood Mfg. Co. is within the scope of and subject to our original enforcement decree. It will, however, be presently denied, without prejudice, in respect to the determination of pack-pay allowances made, and the matter will be remanded to the Board for determination of the amounts of remedial back pay which it regards as being entitled to be awarded up to the present time.

In relation to the Board's determination of that question, it may perhaps appropriately be observed that the matter would seem to be now, possibly for the first time, with the application of the decree to Hardwood Mfg. Co. being resolved, in a posture where, in the language of Mr. Justice Frankfurter's concurring opinion in N. L. R. B. v. Deena Artware, Inc., 361 U.S. 398, 411, 80 S.Ct. 441, 448, 4 L.Ed.2d 400, "it may be expedient for a respondent to reach agreement and avoid further litigation". If such a disposition of the matter is made before the Board, there is, of course, no need for any further deter-

mination of back pay to be made in relation to this proceeding.

Decree in conformity with this opinion.