**NATIONAL LABOR RELATIONS BOARD, Applicant,**
**v.**
**John J. HARRIS, Respondent.**

United States District Court
S. D. New York.
Oct. 6, 1961.

Samuel M. Kaynard, Regional Atty., National Labor Relations Board, New York City, Second Region, George Turitz, Asst. Regional Atty., of counsel.

James V. Altieri, New York City, for John J. Harris, respondent.

HERLANDS, District Judge.

The National Labor Relations Board (hereinafter referred to as the "Board") seeks an order pursuant to section 11(2) of the National Labor Relations Act, 29 U.S.C.A. § 161(2) (hereinafter referred

to as the "Act"), directing the respondent, John J. Harris, to appear before it and give testimony in connection with the pending back-pay proceeding.

Respondent, in refusing to provide the evidence sought, challenges the authority of the Board to determine alter ego responsibility in such a proceeding.

The disputed issues of law will be brought into sharper focus by a delineation of the relevant facts.

By decree filed August 21, 1957, the United States Court of Appeals for the Second Circuit enforced an order of the National Labor Relations Board [113 N. L.R.B. 841 (1955)], finding that Marlo Offset Printing Corporation (hereinafter referred to as "Marlo") had engaged in certain unfair labor practices (Applicant's Exh. A).

The Court's decree, which was entered on consent, ordered Marlo, "its officers, agents, successors, and assigns," *inter alia,* to cease and desist from certain practices, not here relevant, and to make whole six named employees for any loss of pay they may have suffered by reason of discrimination against them. This decree has been complied with in all respects except for the payment of back pay.

The Rules and Regulations of the Board provide that, if after the entry of a court decree enforcing an order of the Board, a controversy arises between the Board and a respondent concerning the amount of back pay due and the controversy is one which cannot be resolved without a formal proceeding, a back-pay specification shall be issued. The specification must show specifically and in detail the amount of back pay owing to each employee. The respondent is given fifteen days in which to file an answer; and a hearing is held before a trial examiner. (See National Labor Relations Board, Rules and Regulations and Statements of Procedure, Series 8 [1959] sections 102.-52–102.59, App. 29 U.S.C.A.)

Pursuant to these rules, a back-pay specification was issued February 4, 1960; and an answer was filed by Marlo on March 9, 1960 (Applicant's Exh. B, p. 2).

In May 1960, Marlo and the Regional Office of the Board stipulated that the amount of back pay due was $5,858.88; and Marlo consented to the entry of a supplemental court order and decree to that effect. The Board disapproved the stipulation (Affidavit of John J. Harris, sworn to May 25, 1961, pp. 8, 9).

On November 23, 1960, the General Counsel moved the Chief Trial Examiner for leave to amend the back-pay specification. The Board's purpose in amending the specification was to render certain alleged alter egos liable for carrying out the decree against Marlo; Marlo having asserted that it had no assets with which to pay the amounts due (See Applicant's Exh. B). The specification as amended alleged that a controversy existed both as to the amount of back pay due and the liability of the six named corporations and Harris personally for carrying out the Court's decree.

The amendments consisted of allegations in paragraphs I through VI that John Harris is president and sole owner of Marlo, Advertisers Production Services, Inc., Harris Advertisers Service, Inc., Harris Pocasset Press Corporation, Harris Union Photoengraving Corporation, Nu-Method Matrix Plate, Inc., and Facts and Features, Inc.; that Harris and all these corporations are engaged in a single, integrated enterprise in producing and distributing printed sales-promotion material; that they constitute a single employer, each the alter ego of the others; and that, in view of the foregoing, they are responsible for carrying out the remedies described in the decree and order, including the back-pay provisions; and directing that a hearing be held before a trial examiner of the Board. Paragraphs VII through XI related to the amounts of back pay owing to the individual employees.

Marlo, in an attempt to prevent the Board from litigating the issue of alter ego responsibility, opposed the motion, although it was first granted as unopposed. Marlo's request for leave to ap-

peal this ruling was denied by the Board without prejudice to raising the issue in exceptions upon the issuance of an Intermediate Report (Applicant's Exh. H). The Board, however, ordered the Regional Director to set a new hearing date, giving Marlo an opportunity to file an answer.

Thereafter, the Trial Examiner received Marlo's opposition to the motion to amend, but again granted it. No request was made to the Board for leave to appeal this ruling.

Marlo persisted, however, in its efforts to prevent the Board from fastening liability on its alleged alter egos. In its answer to the amended back-pay specification (Applicant's Exh. C), it sought a dismissal as to the alleged alter egos on the grounds that: (1) the Board lacked jurisdiction to consider Marlo's relationship to the other corporations in this proceeding; and (2) that the parties named in paragraphs I through VI of the amended back-pay specification (i. e., the alleged alter egos) were not served with or named in any charge as provided by section 10(b) of the Act [29 U.S.C.A. § 160 (b)] as thus are not proper parties-respondent.

At the hearing (which opened February 13, 1961), the trial examiner granted the General Counsel's motions to strike the above defenses and denied Marlo's motion to strike from the amended specification the allegations with respect to alter ego responsibility (Applicant's Memorandum, filed May 23, 1961, p. 3). No request for leave to appeal was made to the Board.

The subpoena here in question was served on John J. Harris by registered mail and was received by him February 6, 1961 (Applicant's Memorandum, p. 3; Applicant's Exh. E). Ten days later, on February 16, 1961, Harris moved pursuant to section 11(1) of the Act (29 U. S.C.A. § 161 [1]) to revoke the subpoena.

Section 11(1) pertinently provides:

"Within five days after the service of a subpoena on any person requiring the production of any evidence in

his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpoena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpoena does not describe with sufficient particularity the evidence whose production is required."

The trial examiner refused to revoke on two grounds: (1) that the evidence to be adduced related to matters put in issue by the specification; and (2) that the petition to revoke was not timely (Applicant's Exh. G). Harris did not request leave to appeal from the Board. His attorney, however, indicated that Harris would not testify with respect to the alter ego allegations in the amended specification. (See Applicant's Exh. I).

On March 2, 1961 the Board, proceeding by order to show cause, sought judicial enforcement of its subpoena (Applicant's Memorandum, p. 2). The District Court (Noonan, J.) enforced the subpoena, holding respondent's defenses to be premature. In an endorsement dated April 11, 1961 (Applicant's Exh. 1), Judge Noonan stated:

"It is the opinion of this court that the defenses raised by the respondent are premature. At present he stands as a witness from whom the N.L.R.B. seeks to obtain information in a Back Pay Proceeding. Whether he will be asked questions which are not pertinent to the proceeding at hand is a question which looms in the future."

On April 27, 1961, the hearing on the amended back-pay specification was resumed before trial examiner Lloyd Buchanan. The respondent appeared and was sworn as a witness. However, he refused to answer questions relating to paragraphs I through VI of the amended specification.

It is not disputed that these questions bear no relation to the amount of back pay due but are concerned solely with

establishing an interrelationship between the companies which may form the basis for alter ego liability.

The trial examiner thereupon adjourned the hearing to enable the Board to institute further judicial proceedings to compel Harris to testify.

In the instant proceeding, the Board seeks an order directing Harris to appear and give testimony and answer all questions relevant and material to the matters under investigation, including all questions relevant to paragraphs I through VI of the amended back-pay specification.

■ A proceeding for judicial enforcement of an administrative subpoena is a case or controversy. Interstate Commerce Commission v. Brimson, 1894, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047, to which appropriate defense may be made. Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614. The judicial function in such a proceeding involves more than the automatic issuance of an order. 1 Davis, Administrative Law, section 3.12 (1958). "Instead of authorizing agencies to enforce their subpoenas, Congress has required them to resort to the courts for enforcement. In the discharge of that duty courts act as courts and not as administrative adjuncts." Mr. Justice Frankfurter, dissenting, in Penfield Co. of California v. Securities and Exchange Commission, 1947, 330 U.S. 585, 604, 67 S.Ct. 918, 928, 91 L.Ed. 1117.

The District Court, however, is restricted in the scope of the issues presented for adjudication by such an enforcement proceeding.

■ The coverage of the Act is for the administrative body to decide and not the District Court. The court must accept as sufficient the administrator's pleading that it has reason to believe that the matter under investigation is within the coverage of the statute. Endicott Johnson Corp. v. Perkins, 1943, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424; See National Labor Relations Board v. Northern Trust Co., 7 Cir., 1945, 148 F.2d 24, cer-

tiorari denied 1945, 326 U.S. 731, 66 S.Ct. 38, 90 L.Ed. 435.

The inquiry of the administrative body is not limited by forecasts of the probable result of the investigation. The agency in an enforcement proceeding does not have to demonstrate to the court the existence of probable cause to believe that the law has been violated. Oklahoma Press Publishing Co. v. Walling, supra. See National Labor Relations Board v. Kingston Trap Rock Co., 3 Cir., 1955, 222 F.2d 299.

However, a court may always consider the question of the authority of the administrative body to conduct the investigation. Harriman v. Interstate Commerce Commission, 1908, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253; Oklahoma Press Publishing Co. v. Walling, supra; Note, Use of Contempt Power to Enforce Subpoenas and Orders of Administrative Agencies, 71 Harv.L.Rev. 1541 (1958); 1 Davis, section 3.12; see Endicott Johnson Corp. v. Perkins, supra, 317 U.S. at page 512, 63 S.Ct. 339. If the administrative body lacks the authority to conduct the investigation, its subpoena will not be enforced.

There are circumstances in which a stockholder will be liable for the debts of a corporation, and a corporation responsible for the obligations of an affiliate. See National Labor Relations Board v. Deena Artware, Inc., 1960, 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400.

The August 21, 1957 decree of the Court of Appeals imposes an obligation for back pay on Marlo, its officers, agents, successors and assigns. The responsibility of companies other than Marlo for carrying out the decree of the Court of Appeals depends upon an appraisal of relationships and behavior. See Regal Knitwear Co. v. National Labor Relations Board, 1945, 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661.

■ Orders of the Board are binding upon successors and assigns who operate as "merely a disguised continuance of the old employer." Southport Petroleum Co. v. National Labor Relations Board,

1942, 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718.

Corporations which appear to be separate may, in truth, be divisions or departments of a single enterprise jointly responsible for carrying out the decree of the court. National Labor Relations Board v. Deena Artware, Inc., supra.

■ The liability imposed upon the alter ego or successor is not primary but derivative. It results not from a violation of the Act but from the relationship of the alter ego to the primary obligor.

■ The appraisal of relationship and behavior necessary to a determination of derivative responsibility can be made by the Court of Appeals if contempt proceedings are instituted. National Labor Relations Board v. Ozark Hardwood Company, 8 Cir., 1960, 282 F.2d 1. It is also a proper subject for Board determination, a determination which the Board has authority to make prior to seeking enforcement of its order in the Court of Appeals. See National Labor Relations Board v. Charles P. Krimm Lumber Co., 2 Cir., 1953, 203 F.2d 194; National Labor Relations Board v. E. C. Brown Co., 2 Cir., 1950, 184 F.2d 829; National Labor Relations Board v. Adel Clay Products Co., 8 Cir., 1943, 134 F.2d 342.

■ However, once the Board, in the exercise of its discretion, seeks enforcement of its order in the Court of Appeals, the Court of Appeals obtains exclusive jurisdiction over the proceedings. Conflict of authority is thereby avoided. Ford Motor Co. v. National Labor Relations Board, 1939, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221; International Union of Mine, Mill and Smelter Workers v. Eagle-Picher Mining & Smelting Co., 1945, 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649.

Section 10(e) of the Act [29 U.S.C.A. § 160(e)] provides in pertinent part:

"The Board shall have power to petition any court of appeals of the United States * * * for the enforcement of such order * * *. Upon the filing of such petition the court * * * shall have jurisdiction of the proceeding and of the question determined therein * *. Upon the filing of the record with it the jurisdiction of the court shall be exclusive * * *."

Having obtained a decree of the Court of Appeals, the Board cannot then proceed to conduct an inquiry as to alter ego responsibility without first applying to the Court of Appeals, which has exclusive jurisdiction over the proceeding, for leave to adduce additional evidence.* Section 10(e) of the Act [29 U.S.C.A. § 160(e)] provides:

" * * * If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, * * * and to be made a part of the record. * * *"

The Board made such application prior to conducting its inquiry with regard to alter ego liability in National Labor Relations Board v. Deena Artware, Inc., supra, and National Labor Relations Board v. Ozark Hardwood Company, supra. In the instant proceeding, the Board is, in effect, asking this district court to grant

---

* Upon the entry of a general order by the Court of Appeals calling for back pay and reinstatement, the Board without additional direction does have the authority to determine the exact amount of back pay to be tendered and the availability of equivalent positions for those employees ordered reinstated. General orders of this sort "manifestly contemplate" this further administrative action.

National Labor Relations Board v. Bird Mach. Co., 1 Cir., 1949, 174 F.2d 404, 405; Home Beneficial Life Ins. Co., Inc. v. National Labor Relations Board, 4 Cir., 1949, 172 F.2d 62; National Labor Relations Board v. Royal Palm Ice Co., 5 Cir., 1953, 201 F.2d 667; see National Labor Relations Board v. New York Merchandise Co., 2 Cir., 1943, 134 F.2d 949.

it permission to by-pass the Court of Appeals.

▮ Absent Court of Appeals permission, the Board lacks authority to inquire into alter ego responsibility at this stage of the proceeding. Consequently, at this time, this court will not require Harris to answer questions relating to paragraphs I through VI of the amended specification. Harris, however, is not relieved of his obligation to give testimony with respect to any other matters which are properly before the Board.

This motion, said by counsel to present a question of first impression, requires the drawing of a line of demarcation between the functions of the Court of Appeals and the District Court vis-à-vis Board proceedings.

By statute [section 10 of the Act, 29 U.S.C.A. § 160(e)], if the Board desires judicial enforcement, the Court of Appeals is the forum to which the Board must apply not only for "the enforcement" of its unfair labor practice order but also for "leave to adduce additional evidence." By another provision of the statute [section 11(2) of the Act, 29 U.S.C.A. § 161(2)], the District Court is the forum to which the Board must apply for judicial enforcement of the Board subpoena. The two statutory provisions must be construed in harmony with each other.

▮ Where, as here, the Board desires to adduce evidence to support derivative liability on the part of certain corporations on the ground that they are alter egos of a corporation already adjudged guilty of an unfair labor practice, and where the Board deems it necessary to probe the corporate and business relationships among all the said corporations in order to establish their alleged identity, the Board must apply to the Court of Appeals for an order granting appropriate discovery, i. e., for "leave to adduce [such] additional evidence."

After the Court of Appeals shall have granted a discovery order (vide the procedure indicated in Deena Artware and Ozark Hardwood, supra), the District Court will be in a position to determine whether a Board subpoena issued by way of implementation of such discovery order comes within the ambit of the order.

The recent decision of Judge Metzner in N. L. R. B. v. C. C. C. Associates et al., D.C.S.D.N.Y.1961, 197 F.Supp. 535 is sharply distinguishable from the case at bar. In the C. C. C. Associates case, the Court of Appeals had entered a decree enforcing the order of the Board and directing Cousins Associates, Inc., its "successors and assigns" to abide by and perform the direction contained in the Board's order. Judge Metzner explicitly adverted to the circumstance that the Board's investigation of the issue—whether C. C. C. Associates, Inc. was the successor of Cousins Associates, Inc.— "is in conformity with the decree of the Court of Appeals."

Motion denied. This opinion constitutes an order.

