306 F.2d 534
 NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellee,
v.
C. C. C. ASSOCIATES, INC., John E. Wilson, Ira Conklin, Charles Conklin, W. H. Conklin, W. C. Conklin and Ira Conklin, Jr., Respondents-Appellants.
NATIONAL LABOR RELATIONS BOARD, Appellant,
v.
John J. HARRIS, Appellee.
 No. 246.
 No. 302.
 Docket 27254.
 Docket 27313.
 United States Court of Appeals Second Circuit.
 Argued May 23, 1962.
 Decided July 30, 1962.
 
 Stephen B. Goldberg, National Labor Relations Board, Washington, D. C., (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel and Mary Louise Griffin, on the brief), for National Labor Relations Board.
 Charles R. Katz, New York City (Katz & Wolchok, New York City, on the brief), for C. C. C. Associates, Inc., et al.
 James V. Altieri, New York City, for John J. Harris.
 Before LUMBARD, Chief Judge, and SMITH and MARSHALL, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 These two appeals, both from orders of the United States District Court for the Southern District of New York, were argued together and raise a common major question: whether, after a court of appeals has ordered enforcement of an order of the N.L.R.B. requiring the payment of back pay to employees, the Board may proceed to conduct an inquiry as to alter ego and successor responsibility for compliance with the order, or whether it must apply to the court of appeals for authority so to inquire. We sustain the Board's power to proceed without further application to the court of appeals. Accordingly, we affirm Judge Metzner's order under § 11(2) of the National Labor Relations Act, 29 U.S. C.A. § 161(2) which enforced the Board's subpoenas demanding the appearance of the appellants in the C. C. C. Associates case at a hearing inquiring into their sucessorship to and relations with Cousins Associates, Inc., and reverse Judge Herlands' refusal to enforce a similar subpoena demanding Harris' appearance at a hearing to determine whether certain corporations owned by him are the alter egos of Marlo Offset Printing Corporation.
 
 
 2
 N. L. R. B. v. C. C. C. Associates et al. — On October 21, 1960 this court entered a decree enforcing the Board's order of November 12, 1959, 125 N.L.R.B. 73, which directed that certain unfair labor practices of Cousins Associates, Inc. should cease and that four employees be reinstated and given back pay because of their wrongful discharge. Our decree ordered that "Cousins Associates, Inc., its officers, agents, successors and assigns, abide by and perform the direction of the Board in said order contained." The Board in its brief states that the order "has been complied with in all respects material here except for the payment of back pay, Cousins having no assets with which to pay." On April 28, 1961 the Board's General Counsel served a back pay specification and notice of hearing on Cousins, and in addition on C. C. C. Associates, Charles Conklin, Ira Conklin, and John Wilson, none of whom had been parties to the unfair-labor-practice proceedings. The specifications alleged facts indicating that after the issuance of the Board's order, these two Conklins and Wilson as officers and directors of Cousins took steps to cause Cousins to cease operating, to pay over $35,000 in cash to them as a result of which Cousins had no funds to pay the back pay under the decree, and to transfer the business to C. C. C. Associates, Inc., of which Ira Conklin is the majority stockholder and three other members of his family are the other stockholders. It also stated that C. C. C. has continued to run the Cousins' gasoline service stations with substantially the same employees and supervisors. The Board alleged that as a result of these acts C. C. C. is the successor of Cousins "and is responsible for carrying out the * * back pay provisions," and that in the alternative the two Conklins and Wilson are liable for preventing Cousins from paying the required back pay. The specification then proceeded to an elaborate computation of the amounts due.
 
 
 3
 Cousins filed an answer denying most of the Board's allegations and alleging that Cousins had ceased to operate on December 14, 1959 "solely because of economic considerations" and that any back pay should not extend beyond that date.
 
 
 4
 The Board then issued and served, pursuant to § 11(1) of the N.L.R.A., 29 U.S.C.A. § 161(1), subpoenas returnable June 6, 1961, seven subpoenas duces tecum addressed to C. C. C., Wilson and the five Conklins,[1] and three subpoenas ad testificandum to Ira Conklin, Charles Conklin and John E. Wilson. On June 6 all those subpoenaed appeared specially by their attorney and asked the Trial Examiner to revoke the subpoenas, claiming that the Board had no jurisdiction in a back-pay proceeding to inquire into successor liability or personal liability for prevention of compliance by Cousins. The Trial Examiner held that the matter was properly before the Board, and denied the petition. The Board granted the appellants' "application for special permission to appeal" and sustained the Trial Examiner. Since the appellants indicated that they still would not comply, the General Counsel of the Board thereupon petitioned the district court, pursuant to § 11(2) of the N.L.R.A., 29 U.S.C. § 161(2), for enforcement of the subpoenas. On September 12, 1961 Judge Metzner granted the Board's petition, in an opinion which is reported at D.C., 197 F.Supp. 535. From this ruling C. C. C. and the six individuals appeal.
 
 
 5
 N. L. R. B. v. John J. Harris — On August 21, 1957, this court entered a consent decree enforcing the Board's order of August 19, 1955, 113 N.L.R.B. 841, directing that Marlo Offset Printing Corporation, "its officers, agents, successors, and assigns," cease certain unfair labor practices and, inter alia, make six employees whole for any loss of pay they might have suffered by reason of discrimination against them. Like Cousins, Marlo has complied in all respects but for the payment of the back pay, claiming that it has no assets. On February 4, 1960, the General Counsel served a back pay specification upon Marlo, and on November 23, 1960 made a motion, which the Chief Trial Examiner granted, to amend the specification to allege that John J. Harris is the president and sole owner of Marlo and various other corporations (the "associated companies"), all of which constitute a single integrated enterprise engaged in the production and distribution of sales promotion material. The amended specification alleges that the associated companies are in fact a single employer, each corporation being the alter ego of each of the others, with the result that the associated companies are liable for the discharge of Marlo's back pay obligation. The specification goes on to calculate the amounts of back pay alleged to be due. On February 13, 1960, the Trial Examiner granted the General Counsel's motion to strike Marlo's affirmative defenses attacking the Board's jurisdiction to determine alter ego responsibility in a back pay proceeding; this dismissal is, of course, not before us on this appeal.
 
 
 6
 Meanwhile, Harris had been served with a subpoena and his motion to revoke it was denied by the Trial Examiner on February 16, 1961. Harris' refusal to appear resulted in an enforcement order by the district court on April 11, 1961, which, however, left open Harris' objections to the subject of the inquiry until specific questions should be asked. A hearing was held on April 27, at which Harris refused to answer any questions concerning the relationship between Marlo and the Associated Companies, claiming — as did the appellants in the C. C. C. Associates case — that the Board lacked authority to determine the derivative liability of new parties in a back pay proceeding. In this case, however, Judge Herlands, on October 6, 1961, denied the Board's application for enforcement of the subpoena, 198 F.Supp. 947, and the Board appeals.
 
 
 7
 In N. L. R. B. v. C. C. C. Associates et al., Judge Metzner held that the order of this court, in directing compliance by the "officers, agents, successors and assigns" of Cousins Associates, thereby authorized the Board to pursue the investigation into successor liability and prevention of performance by officers, and thus to issue the subpoenas there in question. In N. L. R. B. v. Harris, Judge Herlands found no authorization in these words for an inquiry into alter ego liability, and therefore held that it was necessary for the Board, before starting such an inquiry, to obtain the permission of this court under § 10(e) of the N.L.R.A., 29 U.S.C.A. § 160(e), to adduce additional evidence on the subject of derivative responsibility; he held that the provision of § 10(e) making the jurisdiction of the court of appeals "exclusive" upon the filing of the record with it in the proceedings for the enforcement of the order ousted the Board of jurisdiction to investigate derivative liability.[2]
 
 
 8
 On the view which we take of these appeals, the two cases are indistinguishable and raise an identical question, since we hold that the "exclusive" jurisdiction of the court of appeals is not such as to require its authorization for investigation into derivative liability. In addition to this argument from the "exclusiveness" of our prior jurisdiction, two other major arguments are raised to support the proposition that the Board improperly issued the subpoenas involved in these two cases. First, it is argued that the additional parties named in the back pay specifications could not be proceeded against by the Board without being served with charges of unfair labor practices under the provisions of § 10(b) of the N.L.R.A., 29 U.S.C.A. § 160(b); in other words, the contention is that an order of the N.L.R.B. cannot be enforced against persons not served in the proceedings resulting in the order or served with charges in new proceedings. Second, it is contended that the Board's rules pertaining to back pay proceedings (Rules and Regulations of the N.L.R.B. Series 8 1959 §§ 102.52-59, 24 Fed. Reg. 9108-9109) do not permit such matters as the liability of successors, alter egos and persons frustrating performance to be inquired into in such proceedings, which are limited by § 102.52 to the determination of "a controversy between the Board and a respondent concerning the amount of back pay due."
 
 
 9
 Since these proceedings deal with nothing more than applications by the Board for enforcement of its subpoenas, it is necessary to consider first the scope of permissible judicial inquiry in deciding whether such an application should be granted or denied. Such inquiry is extremely limited. No defense relating to the merits of the administrative proceedings may be raised, nor need the agency even make any showing of probable cause to believe that the law has been violated. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943); Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); F. T. C. v. Crafts, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957); 1 Davis, Administrative Law Para. 3.12 (1958). There is no complaint as to the scope of the subpoenas, and no substantial objection was made below that the information sought is not relevant to the question of derivative liability. Thus the only question before us is whether the N.L. R.B. has the general power to conduct the proceedings in which the subpoenas were issued. Ibid.; e. g., D. G. Bland Lumber Co. v. N. L. R. B., 177 F.2d 555 (5 Cir. 1949); see Note, 71 Harv.L. Rev. 1541 (1958).
 
 
 10
 Thus it is not open to us — nor was it to the district court — to consider the particularities of the allegations of derivative liability in these cases. The question before us is only whether, if the Board's General Counsel alleges that someone other than the respondent against whom an order has been issued and enforced is responsible for compliance with that order, the Board may consider the allegations in the kind of proceeding it has begun in these cases.
 
 
 11
 The argument that it is a violation of the Board's own rules of procedure to consider these allegations is what is designated a "back pay proceeding" is equally inapropos as a defense to compliance with its subpoenas. There is no denial that the Board, if properly authorized, could under some procedural rubric consider the matter of derivative liability, see N. L. R. B. v. Ozark Hardwood Co., 282 F.2d 1 (8 Cir. 1960). We do not find it necessary to inquire further at this stage of the proceedings. Under the standards of judicial inquiry in subpoena enforcement, it is enough in this regard to note that the subpoenas requested information which was relevant to inquiries which it was within the power of the Board to initiate if authorized to do so in the light of the prior proceedings in the cases. This is sufficient to satisfy the requirements of the statute under which the subpoenas were issued, § 11(1) of the N.L.R.A., 29 U.S. C.A. § 161(1) and the more general requirements for the enforcement of such subpoenas under such provisions as § 11(2). Any procedural irregularities may be considered only on direct review of any final order which the Board may issue.
 
 
 12
 The question is properly raised whether under the N.L.R.A. the Board is empowered to consider derivative liability of new parties without beginning a new unfair-labor-practice proceeding against them under § 10(b), 29 U.S.C.A. § 160 (b). We find that it is so empowered. The Board in the present proceedings is not charging the new parties with any unfair labor practice of their own or participation in those of the original respondents; rather, it alleges only that they bear such relationships to parties already determined to be guilty that they share with them the already adjudicated financial obligation to make certain employees whole for lost pay. Thus these are not primary actions to determine violations of law, as are provided for in § 10(b), but rather ancillary enforcement proceedings. We interpret N. L. R. B. v. Deena Artware, Inc., 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960), as holding that derivative liability for compliance with a judicially enforced unfair-labor-practice order may be imposed upon parties not themselves charged in the initial proceedings. N. L. R. B. v. Thayer, Inc., 201 F.Supp. 602 (D.Mass.1962). See Southport Petroleum Co. v. N. L. R. B., 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942); N. L. R. B. v. Hopwood Retinning Co., 104 F.2d 302 (2 Cir. 1939). As we have noted above, we are not permitted to inquire into the actual merits of the Board's allegations concerning the derivative liability of any of the new parties at this stage of the proceedings.
 
 
 13
 The question remaining for decision is whether, after this court had enforced the original unfair-labor-practice orders, it was open to the Board on its own to begin proceedings to determine derivative liability, rather than petitioning the enforcing court to hold the new parties in contempt, as it did in such cases as N. L. R. B. v. Deena Artware, Inc., supra, or requesting its permission to conduct supplementary proceedings, as it did in N. L. R. B. v. Ozark Hardwood Co., supra. We hold that it was open to the Board to alter its former approach to the determination of derivative liability and to proceed as it did in the two cases at bar.
 
 
 14
 The Board would have had unquestionable jurisdiction to inquire into the questions of derivative liability in its original proceedings on the unfair-labor-practice charges, if it had chosen to do so, and its findings on that subject would have had the same force as any other findings in its original order. E. g., N. L. R. B. v. Adel Clay Prods. Co., 134 F.2d 342 (8 Cir. 1943); N. L. R. B. v. Condenser Corp., 128 F.2d 67 (3 Cir. 1942). Thus the question before us is essentially whether the Board may without special judicial permission choose to divide its consideration of the existence of unfair labor practices and its consideration of possible derivative liability to remedy such practices into two proceedings, issuing an interlocutory order, separately enforceable by the court of appeals, on the question of violation and then deferring to a supplementary proceeding, if one is necessary, the question of derivative liability.
 
 
 15
 It is now beyond question that it is permissible and proper so to defer consideration of the amount of back pay owed and the details of reinstatement of improperly discharged employees. "It is obviously convenient to wait until the question of unlawful discrimination has been definitively settled either by an order of the court or otherwise, before the Board takes up the amount of back pay, for its decision will turn out to be moot so far as its order is reversed. * * * [T]he same reasons * * * apply with equal force to reinstatement." N. L. R. B. v. New York Merchandise Co., 134 F.2d 949, 951, 952 (2 Cir. 1943). See Wallace Corp. v. N. L. R. B., 159 F.2d 952 (4 Cir. 1947).
 
 
 16
 In its supplementary hearing on back pay and reinstatement, the Board has the same power it would have had if it had gone into the questions on its initial hearing, and its conclusions are subject to the same judicial review. It considers these questions "not as part of a proceeding for contempt, but as part of the Board's duty to complete, or make final, what it very properly left undecided in its first order." N. L. R. B. v. New York Merchandise Corp., supra, 134 F.2d at 952. Thus the inquiry is directed toward the details of the remedy to be prescribed for the unfair practice, and is wholly distinct from an inquiry whether a respondent has complied with the mandates of a completed, judicially enforced final order. The initial enforcing decree of the court of appeals "cannot * * * be interpreted as peremptory in the sense that it will support a proceeding to punish for contempt. Pro tanto it is interlocutory, though it is final as to any of its other provisions that require no further definition." N. L. R. B. v. New York Merchandise Corp., supra, 134 F.2d at 952. See Wallace Corp. v. N. L. R. B., supra, 159 F.2d at 954.
 
 
 17
 It follows from this analysis that it is not necessary for the Board to apply to the court of appeals which has enforced its initial order for permission to conduct a supplementary hearing on back pay or reinstatement. Indeed, some courts have rebuffed the Board's attempts to secure such permission as unnecessary. Home Beneficial Life Ins. Co. v. N. L. R. B., 172 F.2d 62 (4 Cir. 1949); N. L. R. B. v. Bird Mach. Co., 174 F.2d 404 (1 Cir. 1949); N. L. R. B. v. Royal Palm Ice Co., 201 F.2d 667 (5 Cir. 1953). Despite the provision of § 10(e) that "upon the filing of the record with it [by the Board in an enforcement proceeding], the jurisdiction of the court shall be exclusive," it is clear that the jurisdiction of the court of appeals excludes further action by the Board only in those aspects of the case which are or have been sub judice with respect to the interlocutory order. International Union of Mine Workers v. Eagle-Picher Mining & Smelting Co., 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945), is not to the contrary, since there the enforced order of the Board was not interlocutory but fully prescribed the remedies to be had. It is also clear that the provision of § 10(e) requiring a party to apply to the court of appeals for leave to adduce additional evidence applies only with respect to those matters as to which the court of appeals has acquired exclusive jurisdiction. Accordingly, neither of these provisions is a bar to independent supplementary proceedings by the Board to fix back pay or consider problems of compliance with a reinstatement order.
 
 
 18
 It thus being clear that the Board may seek enforcement of an interlocutory determination that the N.L.R.A. has been violated and then proceed without special judicial permission to conduct proceedings leading up to the issuance of an order dealing with the remedial details of back pay and reinstatement, we see no reason why it should not similarly be permitted to defer its consideration of the remedial detail whether its order can be directed derivately against parties other than the employer actually found guilty of the unfair labor practice in question. Considerations of convenience, both to the Board and to its adversaries, militate in favor of the same result. The problems of untangling intercorporate relationships for this purpose may be complex, and the parties should not be compelled to embark upon such an inquiry before it is determined whether the outcome of the basic dispute on the merits will make the inquiry moot. As in the case of back pay and reinstatement, agreement between the parties may make it unnecessary to litigate the question of derivative responsibility. If the party primarily charged is in fact able to comply with the order against it, it will be unnecessary to consider derivative responsibility at all. Moreover, the questions involved in determining whether derivative responsibility exists may to a substantial extent overlap those involved in determining the amount of back pay due and the feasibility of reinstatement; since these latter questions may be deferred, it seems most reasonable that the former should be considered along with them in the supplementary proceeding. Accordingly, we conclude that the Board was authorized to conduct further hearings in these two cases, and therefore that, under the circumstances, its subpoenas should be enforced.
 
 
 19
 The order of the district court in N. L. R. B. v. C. C. C. Associates, Inc. et al., is affirmed, and that in N. L. R. B. v. John J. Harris is reversed.
 
 
 
 Notes:
 
 
 [1]
 The two additional Conklins, W. H. and W. C., are stockholders, directors and officers (together with Ira and Ira, Jr.) of C. C. C. Associates. The Board made no charges against them, and seeks only to secure their testimony
 
 
 [2]
 Section 10(e) provides, in pertinent part, as follows:
 "The Board shall have power to petition any court of appeals of the United States, * * * within any circuit * * * wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. [United States Code]. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board. * * * If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearings before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. * * * Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the * * * Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of title 28."