**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SCHNELL TOOL & DIE CORPORATION and Salem Stamping & Manufacturing Co., Inc., Respondents.**

**No. 16163.**

United States Court of Appeals
Sixth Circuit.
April 27, 1966.

---

**40**

Nancy Sherman, Atty., N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Margaret M. Farmer, Atty., N. L. R. B., Washington, D. C., on the brief.

Harry S. Manchester and C. Kenneth Clark, Jr., Youngstown, Ohio, for respondents, Harrington, Huxley & Smith, Youngstown, Ohio, on the brief.

Before EDWARDS, Circuit Judge, BROWN, District Judge, and GREEN, District Judge.*

GREEN, District Judge.

This case is before the Court upon the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., for enforcement of an order issued against respondents Schnell Tool & Die Corporation and Salem Stamping and Manufacturing Company. The order under consideration is as follows:

* * * Schnell Tool & Die Corporation and Salem Stamping & Manufac-

* Honorable Bailey Brown, United States District Judge for the Western District of Tennessee, and Honorable Ben C. Green, United States District Judge for the Northern District of Ohio, sitting by designation.

turing Co., Inc., their officers, agents, successors and assigns, shall:

1. Cease and desist from:

(a) Interrogating employees coercively concerning their union membership or activities, threatening them with reprisals, such as loss of employment, reduction in earnings or cessation of operations if they continue to support their union; harassing or subjecting union supporters to verbal abuse; questioning applicants for employment concerning their union affiliations, sympathies or attitudes; denying to the union the privilege of posting notices on the plant bulletin board; or threatening to discharge employees who give affidavits or statements to Board agents investigating charges of unfair labor practices.

(b) Discouraging membership in United Steelworkers of America, AFL-CIO, or any other labor organization of its employees, by discharging employees or terminating their employment and refusing to reinstate them, or discriminating in any other manner against them in regard to hire, tenure or any other term or condition of their employment.

(c) Refusing to bargain collectively with the union with respect to rates of pay, wages, hours of employment or other terms and conditions of employment in the bargaining units hereinbefore described as appropriate.

(d) In any other manner, interfering with, restraining or coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act.

2. Take the following affirmative action in order to effectuate the policies of the Act:

(a) Offer employment at Salem Stamping, or at Schnell Tool & Die Plant No. 1, or at Plant No. 2, if it is repossessed to George Bettis, Alfred Stockwell, Orville Weingart, Arthur Brandonisio, John Carlisle, Frank Chestnut, Arthur Rozeski, Homer McCartney, Marvin McFarland, George Pow, Steve Rogers and John Yocus, without prejudice to their seniority or other rights and privileges, and make whole these employees, as well as Robert Bates, for any loss of pay they may have suffered by reason of their permanent layoff at Schnell Tool & Die Plant No. 2 in the manner and to the extent set forth in section V of this report, entitled "The remedy".

(b) Offer to Ormond Long and Phillip Groves immediate and full reinstatement to their former or substantially equivalent positions without prejudice to their seniority or other rights and privileges, and make them, as well as the estate of Charles Messenger, whole for any loss of pay they may have suffered by reason of the respondents' discrimination in the manner and to the extent set forth in section V of this report, entitled "The remedy".

(c) Upon request bargain collectively with the union as the exclusive representative of the employees in the bargaining units hereinbefore described as appropriate and embody in a signed agreement any understanding which may be reached.

(d) Preserve and, upon request, make available to the Board or its agents for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports, and all other records necessary to analyze and compute the amounts of back pay due under the terms of this Order.

(e) Post at their plants at Salem, Ohio, copies of the notice attached hereto marked Appendix. Copies of the said notice, to be furnished by the Regional Director for the Eighth Region, shall, after being duly signed by respondents' representatives, be posted for 60 consecutive days thereafter in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by the respondents to insure that such notices are not altered, defaced, or covered by any other material.

(f) Notify the Regional Director for the Eighth Region, in writing, within 10 days from the date of this Order what steps have been taken to comply herewith.

The said order was adopted by a three-member panel of the Board on September 6, 1963, acting on a Recommended Order of a Trial Examiner.

The order issued based on a complaint filed February 15, 1963, arising from charges originally filed on December 28, 1962, as amended on January 3, 1963 and February 11, 1963. The activities of respondents alleged to have constituted the unfair labor practices occurred during a period from mid-1962 to early 1963.

In light of the disposition of this matter made herein, it is not necessary to set forth a full exposition of all the facts pertinent to the alleged unfair labor practices. A short history of the companies concerned and their relationship to the union provides a sufficient background for the Court's determination.

Schnell Tool & Die Company and Salem Stamping & Manufacturing Company were separate Ohio corporations. Both corporations were wholly owned by the Schnell family, with the exception of two shares of Schnell Tool stock. The patriarch of the Schnell family is Michael Schnell, who along with his son Charles Schnell ran the affairs of the two corporations. Both corporations had the same officers and board of directors.

Schnell Tool was engaged in the manufacture of metal stampings, metal stamping dies, tools, jigs and fixtures. Salem Stamping was engaged in the manufacture of V-belt pulleys and some stampings. Schnell Tool had two separate manufacturing facilities, known as Plant No. 1 and Plant No. 2. Plant No. 1 shared the same building with Salem Stamping, while Plant No. 2 was located some distance away. Plant No. 2 had formerly been the Gonda Engineering Company, engaged in essentially the same business as Schnell Tool, and was purchased by Schnell Tool in 1960 when Gonda ran into serious financial difficulties.

In the summer of 1962 a union organizational campaign was begun among the employees of both Schnell Tool and Salem Stamping. On October 9, 1962 separate elections on the question of union representation were held for Schnell Tool and Salem Stamping. On October 16, 1962 the union was certified as the bargaining representative of the employees, in two separate units consisting of the Schnell Tool employees at both plants in one unit and of the Salem Stamping employees in the other. In Schnell Tool the vote for the union was 28 for to 22 against, while at Salem Stamping the union prevailed by a 29 to 6 vote.

Some time between October 16 and November 8, 1962, not clearly established in the record, Schnell Tool leased Plant No. 2 to Quaker Manufacturing Company, a corporation wholly owned by the manager of the die shop in Plant No. 2 and an associate of his who had been plant manager of another concern in Salem, Ohio, engaged in die operations. Quaker Manufacturing was formed for the purpose of leasing Plant No. 2, and the lease, which was extremely favorable to the lessee, contained an option to buy. Upon the consummation of this transaction the Schnell employees of the Tool and Die Department of Plant No. 2 were moved to Schnell Plant No. 1. The remainder of the Plant No. 2 employees were not transferred.

The first post-election negotiating session between the companies and the union took place on November 7, 1962. Mr. Harry S. Manchester, attorney for the companies, met with the union representatives on that date. Thereafter several more meetings were had between Mr. Manchester and the Union representatives, ending with a meeting on January 4, 1963. No agreement was reached as a result of the said meetings, and shortly thereafter these proceedings were commenced before the National Labor Relations Board.

The only other facts of record before the Board which this court considers

necessary to relate herein are with reference to certain alleged individual discriminatory discharges of three Schnell Tool employees. Ormond Long, who was a leader in the union movement, was discharged from Schnell Tool on January 16, 1963. He had previously been suspended from employment on December 17, 1962. Charles Messenger, who died early in 1963, was discharged on December 19, 1962. Phillip Groves was discharged by Michael Schnell on November 19, 1962.

In entering the order herein the Board adopted the Trial Examiner's Findings of Fact and Conclusions of Law, which are summarized in petitioner's brief as follows:

> The Board found that Schnell Tool and Salem Stamping constitute a single employer for the purposes of the Act. The Board further found that the Company (i. e., Schnell Tool and Salem Stamping) interfered with, restrained, and coerced employees in the exercise of their statutory rights, in violation of Section 8(a) (1) of the Act; that the Company leased Plant No. 2 of Schnell Tool, discharged 13 employees employed in that plant, and refused them employment at the Salem Stamping plant in order to weaken the Union, thus violating Section 8(a) (1) and (3) of the Act; that the Company discharged Ormond Long, Charles Messenger, and Phillip Groves because of their union activity, in violation of Section 8(a) (1) and (3) of the Act; and that the Company failed and refused to bargain with the Union in good faith, in violation of Section 8 (a) (5) and (1) of the Act.

Respondents challenge each of the above findings, certain of which are primarily factual questions while others also involve issues of law. In addition, respondents contend that error was committed in the Board proceedings in the taking and transcribing of the record and the refusal of the Board to permit the testimony of Michael Schnell to be presented into evidence by way of written interrogatories.

The Court has considered respondents' arguments regarding the procedural aspects of this case, and finds no prejudicial error therein.

■ The asserted inaccuracies in the record are not the subject of an assignment of error before this Court, although they are discussed in respondents' brief and were argued to the Court. In any event, the Court considers the official record to be proper.

■ As to the Michael Schnell affidavit, the Court is of the opinion that the Board was correct in rejecting the said affidavit. The record reflects that respondents denied the Board an opportunity for oral cross-examination of Mr. Schnell at the time the affidavit was tendered. In September of 1964 respondents moved this Court for permission to adduce this testimony under section 10 (e) of the N.L.R.A., 29 U.S.C. § 160(e). Counsel for the Board objected to the introduction of the affidavit of Mr. Schnell as evidence on the ground that they were not given an opportunity to orally cross-examine him in accordance with the Rules and Regulations of the Board, and the motion was denied by this Court on November 19, 1964. The Court has not been shown any substantial reason for reversing its prior holding.

■ The Court is of the opinion that there is substantial evidence supporting the Board's finding that during the period relevant to these charges Schnell Tool and Salem Stamping constituted a single integrated employer.

As previously stated, the Schnell family owned virtually all the stock of both corporations, and both corporations had the same officers and directors. The record further reflects a common direction of the affairs of both corporations, including their labor policies, by the Schnell family. There is also the factor of sharing of physical facilities and offices reflected in the record. Based on all the evidence the Board was clearly justified in arriving at the conclusion that both corporations constituted a single employer for the purposes of the Act.

N. L. R. B. v. Elias Brothers Big Boy, Inc., 325 F.2d 360 (CA 6, 1963); N. L. R. B. v. Royal Oak Tool & Machine Co., 320 F.2d 77 (CA 6, 1963).

Subsequent to the rendition of the Board's order in these proceedings events transpired which the Court considers to be of such a nature as to materially affect enforcement of a substantial part of the Board's order. As set forth in respondents' reply brief, it appears that in November, 1964, Schnell Tool discontinued operations at Plant No. 1 and sold the plant and equipment to Quaker Tool & Die, Inc., and that soon thereafter Salem Stamping sold its productive equipment and transferred the premises it used to the Clark Pulley Co.

As matters now stand, it appears that neither of respondents presently owns or operates any manufacturing facilities.

At the oral argument before this court counsel for petitioner conceded that the order here under consideration is not per se enforceable against respondents' purchasers and that further proceedings would be necessary to determine if there existed a relationship between the vendors and vendees which would entitle the Board to enforce this order against the successor companies.

It is clear from the face of the order that enforcement of its provisions, with the exception of those calling for the award of back pay, requires the existence of a functioning employer.

█ In view of the change of circumstances since the adoption of the Board's order (it appearing that respondents are no longer functioning employers, having sold all their manufacturing facilities), a decree of enforcement against respondents of the full terms of the order, which was rendered prior to the said sales, would be, in the Court's opinion, a vain act.

It was suggested by counsel for petitioner at the oral argument that if the Court were to enter a decree of enforcement further proceedings could then be had before the Board to determine if the decree was enforceable against the purchaser corporations. It is this Court's belief that this procedure puts the proverbial cart before the horse. What petitioner presently seeks is a decree of enforcement of its pre-sale order before petitioner itself determines whether there is any functioning employer against whom such a decree could in fact be enforced.

The Court is of the opinion that if petitioner seriously considers seeking enforcement against Quaker Tool & Die, Inc. and Clark Pulley Co. of those portions of the order requiring affirmative action, it should institute the necessary proceedings before the Board to secure a determination that the decree is so enforceable. If it should then be determined that the necessary privity between respondents and their successors is lacking, many issues of fact and law involved herein will be rendered moot. If, on the other hand, the Board should find the order enforceable against these additional parties, all those affected by such determination would be before the Court in a single enforcement proceeding and the case could be disposed of as an integrated unity.

For the foregoing reasons the Court believes that sound judicial discretion requires the withholding of consideration of a full decree of enforcement at this time, pending further action by petitioner.

The Court is in a position to pass on that portion of paragraph 2(b) relating to the award of back pay to the three named employees and paragraph 2(d) requiring the production of books and records necessary for the computation of such awards.

█ With regard to the Board's findings that employees Long, Messenger and Groves were discriminatorily discharged the Court finds that there is substantial evidence in the record to support the said findings, and will grant enforcement of that portion of the order requiring respondents to make employees Ormond Long, Phillip Groves and the estate of employee Charles Messenger

whole for any loss suffered as a result of the said discharges.

The Court is likewise in a position to consider that portion of paragraph 2(a) of the Board's order requiring respondents to make whole thirteen named employees for any loss of pay they may have suffered by reason of permanent layoff at Schnell Plant No. 2.

The Court has heretofore affirmed the Board's finding that Schnell and Salem constituted a single unit employer, and the Court also considers the Board's conclusion that employees were transferred between the two corporations during their existence to be supported by substantial evidence. The record reflects that when the union became aware that Plant No. 2 was to be closed it requested respondents to transfer the production employees of Plant No. 2 to Salem, which was hiring, or to make the question the subject of collective bargaining. Respondents advised the union that the employees would not be granted the right to transfer to Salem, and refused to bargain on the issue.

On this appeal respondents contend that Plant No. 2 was disposed of for economic reasons, and the closing thereof was not discriminatory. While there is evidence in the record in support of this position, this Court cannot ignore the totality of circumstances surrounding the disposal of Plant No. 2.

The record contains substantial evidence of a long-standing anti-union attitude on the part of respondents' management which came to the surface about the time of the union representation election. Plant No. 2 was advertised for lease or sale the very day the union was certified and three days later its employees were notified "all operations of Schnell Tool & Die Plant No. 2 will cease."

■ Coincidence in time between events in a union organizing campaign

and company activities which have an adverse effect thereon should be considered in reviewing N.L.R.B. inferences of illegal motivation for such acts. N. L. R. B. v. Jamestown Sterling Corp., 211 F.2d 725 (CA 2, 1954); N. L. R. B. v. Iron City Sash & Door Co. of Johnstown, 352 F.2d 437 (CA 6, 1965).

■ From these factors (and others contained in this record) the Court concludes that there is substantial evidence to support the Board's finding that the closing of Plant No. 2 was discriminatory and in violation of Sections 8(a) (1) and (3) of the National Labor Relations Act. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Court will, therefore, affirm the Board's finding on the discriminatory layoff question, and will remand the case to the Board to determine what awards are due thereunder. The Court is doing so, however, with the thought that this question may be largely academic, for reasons set forth hereinafter.

It was admitted at the oral argument that none of the thirteen men referred to in paragraph 2(a) of the Board's order had filed complaints with the Board as a result of the closing of Plant No. 2 and that there was no affirmative evidence in the record reflecting claimed losses sustained by the said individuals as a result of the closing of Plant No. 2.[1] As summarized in petitioner's brief, the Board found that respondents closed Plant No. 2, discharged the thirteen employees and refused them employment at Salem Stamping. However, the record does not reflect this, as none of the thirteen employees appeared as witnesses at the hearing before the trial examiner.

The Court would have been better satisfied with the record before it if there was some indication that there were in fact losses sustained as a result of the discriminatory closing of Plant No. 2.

---

1. Respondents submitted affidavits from three of the employees named in paragraph 2(a) in which the employees made no claim for lost wages and stated: "I object to my name being used in any charge being filed against employer of Unfair Labor Practices, and at no time did I authorize my name to be used."

As matters now stand, it appears to the Court that many of the named employees will have little, if any, compensation due them.

For the reasons stated herein, the order of the Board will be enforced as to that portion of paragraph 2(a) requiring respondents to make whole the named employees for any loss of pay they may have suffered by reason of the discriminatory closing of Schnell Plant No. 2, that portion of paragraph 2(b) requiring respondents to make whole Ormond Long, Phillip Groves and the estate of Charles Messenger for any loss of pay they may have suffered by reason of the discriminatory discharges and as to paragraph 2(d) relative to the preservation and production of payroll records.

The case is ordered remanded to the Board on all other issues for further proceedings consistent herewith.