**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FMG INDUSTRIES dba Gamco Industries, and Galaxie Universal Corp., Inc., Respondents.**

No. 81–7180.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1986.

Decided June 17, 1987.

Peter Ames Eveleth and Bernard P. Jeweler, Washington, D.C., for petitioner.

David Silverman, Encino, Cal., for respondents.

Before TANG, BRUNETTI and LEAVY, Circuit Judges.

BRUNETTI, Circuit Judge:

## INTRODUCTION

These proceedings result from the petition of the National Labor Relations Board (Board) to adjudge both FMG Industries, dba GAMCO Industries (FMG), and Galaxie Universal Corp., Inc. (Galaxie) as the successor to FMG, in civil contempt for failing to comply with this court's decision enforcing a Board order directed at FMG and its successors. We review the Special Master's conclusion that due process requires that determinations of successorship status be made in the first instance by the Board and not by a court of appeals in contempt proceedings.

## FACTS AND PROCEEDINGS

On January 15, 1980, the Miscellaneous Warehousemen, Drivers and Helpers, Local 986, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union) was certified as the exclusive bargaining representative for FMG's shipping and receiving employees, warehousemen and truck drivers, and a unit of the company's production and maintenance employees. On July 21, 1980, the Board found that FMG was engaged in an unfair labor practice by refusing to negotiate with the Union. We enforced the unheeded Board decision and ordered FMG, "its officers, agents, successors, and assigns" to commence collective bargaining with the Union.

Because FMG continued to ignore Board and court orders, the Board instituted contempt proceedings in this court. We suspended these proceedings, relying on FMG's indications that it would commence bargaining with the Union. The company's promises, however, essentially have been unfulfilled.

In May 1982 the Board was advised that FMG's business had been sold to Galaxie. Following an investigation of the sale, the Board determined that Galaxie was a successor to FMG and thus liable for the unfair labor practices of its predecessor. Accordingly, the Board amended its contempt petition, alleging that Galaxie had failed to

comply with the Board's enforced order directed at FMG and its "successors."

During a pretrial conference with a Special Master appointed by this court, Galaxie moved for dismissal, arguing that fifth amendment due process guarantees required the Board preliminarily to determine the successorship issue. In an offer of proof, the Board referred to evidence that purportedly would reveal that Galaxie's non-successorship defense was a sham. Counsel for Galaxie responded by offering to produce evidence that allegedly controverted the Board's claims.

The Special Master recommended that supplemental proceedings be held by the NLRB before an adjudication of contempt as to Galaxie. This recommendation was based on the Special Master's conclusion that courts of appeals were without jurisdiction to determine successorship because due process guarantees required the Board to resolve the issues first. Alternatively, the Special Master based the recommendation on grounds of judicial policy and economy, finding that, even if the court had jurisdiction, the case presented a bona fide factual dispute concerning successorship that necessitated initial Board review.

FMG was thereafter found by the Special Master to be in civil contempt; however, FMG and the Board subsequently reached a settlement, obviating the need for further proceedings involving FMG. Consequently, our review is limited to two issues: whether this court has jurisdiction to determine in a contempt proceeding whether Galaxie is a successor to FMG when the Board has not first convened a hearing on the question; and, if so, whether reasons of judicial policy and economy counsel against exercising jurisdiction in the present case?

## STANDARD OF REVIEW

■ A Special Master's findings of fact will not be disturbed unless clearly erroneous. *N.L.R.B. v. Sequoia District Council of Carpenters*, 568 F.2d 628, 631 (9th Cir. 1977). A Special Master's conclusions of law receive no deference. *Oil, Chemical & Atomic Workers Int'l Union v. N.L.R.B.*, 547 F.2d 575, 580 (D.C.Cir.1977) *cert. de-*

*nied*, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977).

## DISCUSSION

### A. *Due Process Right to an Initial Board Determination*

The issue raised here previously has been discussed in other circuits. In *Aquabrom v. N.L.R.B.*, 746 F.2d 334 (6th Cir. 1984), a chemical company, Drug Research Inc., refused to negotiate with the union elected by the employees of the company's Adrian, Michigan, plant. The union was certified as the exclusive bargaining representative for the plant's employees. Prior to the Board's ruling on certification, Great Lakes Chemical Corp. (Great Lakes) purchased the plant. Thereafter, the Board ordered Drug Research, "its officers, agents, *successors*, and assigns," to bargain with the union. *Id.* at 335 (emphasis in original). Great Lakes refused to bargain, claiming not to be a successor. Without convening a prior Board hearing on the successorship question, the Board instituted contempt proceedings before the court of appeals. A Special Master appointed by the court found Great Lakes was a successor corporation and thus responsible for the remedial steps outlined in the Board's enforced order.

The court did not review the merits of the Special Master's findings, holding that the Board must make the initial determination of successorship, and remanded the case to the Board. *See Id.* at 336. The court drew authority for its position from *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 180, 94 S.Ct. 414, 423, 38 L.Ed.2d 388 (1973), where the Supreme Court stated:

The tie between the offending employer and the bona fide purchaser of the business, supplied by a Board finding of a continuing business enterprise, establishes the requisite relationship of dependence. Moreover, procedures were announced in *Perma Vinyl* which provide the necessary procedural safeguards. There will be no adjudication of liability against a bona fide successor "without affording [it] a full opportunity at a hear-

ing, after adequate notice, to present evidence on the question of whether it is a successor which is responsible for remedying a predecessor's unfair labor practices. The successor [will] also be entitled, of course, to be heard against the enforcement of any order issued against it." (Citations omitted).

The court in *Aquabrom* concluded that the prerequisite hearing referenced in *Golden State* meant a hearing before the Board, stating: "[w]e do not believe that the Supreme Court meant for us to focus only on the safeguards and not the forum in which they are provided." 746 F.2d at 336. Galaxie urges us to adopt this interpretation of the Supreme Court's language in *Golden State.*

■ It is clear that notice and a hearing on the successorship issue are prerequisites to imposing liability on the purchaser of a business for the predecessor's unfair labor practices. Due process, however, does not require that the initial hearing be conducted by the Board. In *Golden State*, unlike the present case, a Board hearing was conducted, resulting in a finding that the acquiring company was a successor and so was liable under the enforced order. 414 U.S. at 171, 94 S.Ct. at 418. Unlike the court in *Aquabrom*, however, we are unable to infer from the fact that in *Golden State* there was a Board hearing, that the Supreme Court was requiring a hearing before the Board.

Other opinions implying that courts of appeals are competent to resolve successorship issues provide evidence that the Supreme Court in *Golden State* was not conferring exclusive original jurisdiction on the Board over such questions. In *Southport Petroleum Co. v. N.L.R.B.*, 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718 (1942), the Court commented on determinations of an aspect of the successorship issue—whether the original offending company had escaped liability by completely divesting itself of ownership—stating:

> Whether there was a *bona fide* discontinuance and a true change of ownership—which would terminate the duty of reinstatement created by the Board's order—

or merely a disguised continuance of the old employer, does not clearly appear, and accordingly is a question of fact properly to be resolved by the Board on direct resort to it, or by the court if contempt proceedings are instituted.

In *N.L.R.B. v. Ozark Hardwood Co.*, 282 F.2d 1 (8th Cir.1960), the 8th Circuit also indicated that courts of appeals could make successorship determinations. Interestingly, in *Ozark*, a company found by the Board to be a successor business, challenged the Board's finding on a basis quite the opposite of that advanced here—that allowing the *Board* to decide the company's status as a successor violated the company's due process rights. *Id.* at 4. According to the company, the question could be resolved only through enforcement proceedings before the court. *Id.* Holding that no due process violation occurred when the court referred the successorship issue to the Board, the court reasoned:

> This was an inquiry in which the court could itself have ancillarily engaged, in attempted effectuation of its decree, by means of a contempt citation and a show-cause order. Equally would the court be at liberty, in our opinion, to call upon or permit the Board to make facilitating examination, determination and record as a basis for judicial consideration....

*Id.* at 4. The court in *Ozark Hardwood* cited *Southport Petroleum* for the proposition that either the court of appeals in a contempt proceeding or the Board may confront such issues. *Id.* See also *N.L.R.B. v. Tempest Shirt Manufacturing Co., Inc.*, 285 F.2d 1 (5th Cir.1960) (the court made the successorship determination without a prior Board ruling).

Galaxie relies on *Aquabrom* for the proposition that due process requires the Board to decide all successorship questions. This reliance is misplaced. The *Aquabrom* court noted that in cases where the evidence clearly reveals the dispute over successorship to be a sham, a court of appeals initially could resolve the issue. 746 F.2d at 336 n. 2. Neither *Computer Sciences Corp. v. N.L.R.B.*, 677 F.2d 804 (11th Cir. 1982), nor *N.L.R.B. v. Schnell Tool and*

*Die Corp.*, 359 F.2d 39 (6th Cir.1966), aid Galaxie on this point. In both cases, the court remanded the successorship question to the Board, not for lack of jurisdiction, but as a matter of "judicial discretion," 359 F.2d at 44, or for policy reasons, "[n]otwithstanding any power [these courts] might have to determine the successorship question as ancillary to enforcement of the prior decree...." 677 F.2d at 806.[1]

In summary, the cases do not support Galaxie's claim that due process guarantees require a Board hearing on the successorship issue before contempt proceedings commence. Although we hold that courts of appeals have jurisdiction to make the initial successorship determination, we nonetheless proceed to determine whether considerations of judicial policy and economy warrant referring the issue to the Board.

### B. *Policy Considerations*

To determine an employer's potential status as a successor, the decision-making body must embark on a highly factual inquiry. *See N.L.R.B. v. Jeffries Lithograph Company*, 752 F.2d 459, 463–69 (9th Cir. 1985). Courts of appeals are not strangers to such tasks and have in other contexts regularly resolved successorship questions. *See Bates v. Pacific Maritime Assoc.*, 744 F.2d 705, 707 (9th Cir.1984) (courts of appeals decide successorship issues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(3)(1983)).[2] Nonetheless, policy considerations suggest that the court refer all but the clearest cases to the Board for initial determination.

The court's analysis of judicial policy in *Computer Sciences* is instructive. After declining to rule on its authority to make initial decisions on successorship issues, the

court found that in all events, "[r]easons akin to those underlying the doctrine of exhaustion of administrative remedies" persuaded the court not to resolve "these highly factual and close issues" before the Board which possessed the expertise in these matters, first ruled on the question. 677 F.2d at 807. According to the court in *Computer Sciences*, policies advanced by its decision are: (1) development of a more complete factual record by the agency; (2) observance of administration autonomy; (3) utilization of agency expertise; and (4) the interest in uniformity within federal labor law, avoiding "divergent administrative and judicial standards for such determinations." *Id.* at 807–08.

The court in *Aquabrom* relied on the *Computer Sciences* policy considerations in finding the Board to be the appropriate body initially to decide successorship questions and remanded the issue to the Board. 746 F.2d at 336–37. *See also N.L. R.B. v. Ozark Hardware Co.*, 282 F.2d 1, 4 (8th Cir.1960) (acknowledging the court's power to determine successorship questions, the court referred the issue to the Board). Recognizing the wisdom expressed in these policies, we conclude that the Board should make the initial successorship determination unless an unusually clear case is involved. Only then do contempt proceedings before this court provide the proper forum.[3]

The Board nonetheless urges us to decide Galaxie's successorship status arguing that the instant case falls within the "clear case" exception as a sham. We decline. The Special Master held that a finding of a sham is not apparent from the record, and to determine whether Galaxie is a sham or a bona fide successor would

---

1. Indeed, the court in *Computer Sciences* stated that: "[w]e simply do not erect an absolute bar to the exercise of a court of appeals' jurisdiction, particularly in contempt cases in which the employer's contention that it is not a bona fide successor is clearly a sham." 677 F.2d at 808 n. 7.

2. While particular successorship analyses vary with the context of each case, i.e., Title VII or labor law, *see Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board*, 417 U.S. 249,

262–63 n. 9, 94 S.Ct. 2236, 2243 n. 9, 41 L.Ed.2d 46 (1974), factual inquiries of a similar nature are in all cases required.

3. We recognize, as did the *Aquabrom* court, that the use of a dual approach to successorship determinations "makes it likely that the Board, just to be on the safe side, will conduct a hearing in all but the most obvious cases." *Aquabrom*, 746 F.2d at 336 n. 2.

require an extensive fact-finding hearing. The Special Master's findings are not clearly erroneous and are supported by the record.

### CONCLUSIONS

Courts of appeals possess jurisdiction to make initial determinations of an employer's status as a successor. Policy considerations, however, dictate that in all but the clearest cases the Board should first resolve the issue.

We retain jurisdiction and REMAND to the Board the question of whether Galaxie is a successor to FMG.

LEAVY, Circuit Judge, dissenting:

I would have the court decide the issue whether Galaxie is a "successor" to FMG.

The majority decides that courts of appeals have jurisdiction to make initial determinations of an employer's status as a successor, but concludes for reasons of policy that "in all but the clearest cases" the Board should first resolve that issue. I agree that we have jurisdiction, but disagree that the issue of successor status should be remanded to the Board.

This is an original proceeding in which the Board asks this court to find the accused, Galaxie, in contempt of the court's May 1, 1981, judgment enforcing a Board order. Our order was directed to FMG and "its officers, agents, successors, and assigns." The Board first instituted contempt proceedings against FMG. Following sale of FMG's business to Galaxie and Board investigation, it amended its petition to accuse Galaxie of contempt. The Board chose to take this path, rather than first bringing an administrative action against Galaxie as in *Golden State*, or seeking leave of the court to conduct supplemental proceedings as in *Ozark Hardwood*. Here, the Board chose to stand as the accuser and should be treated like any other litigant.

Judicial precedent on the proper function of the court in a contempt proceeding involving an alleged "successor" is scanty and inconclusive. *Golden State* was not a contempt proceeding; it and *Southport* both concerned enforcement of *Board* orders. The Supreme Court's only direction regarding contempt proceedings is found in *Southport* where the court stated:

> Whether there was a bona fide discontinuance and a true change of ownership—which would terminate the duty of reinstatement created by the Board's order—or merely a disguised continuance of the old employer, does not clearly appear, and accordingly is a question of fact properly to be resolved by the Board on a direct resort to it, or by the court if contempt proceedings are instituted. *Southport*, 315 U.S. at 106, 62 S.Ct. at 456 (1942).

This suggests that the court has a duty to determine successorship issues when contempt proceedings are instituted, even where the correct result "does not clearly appear." *Id.*

Of the circuit court cases discussed by the majority, only three, *Aquabrom, Computer Sciences* and *Tempest*, were contempt proceedings. In *Aquabrom*, the court remanded the issue of successorship to the Board but retained jurisdiction. In *Computer Sciences* the court dismissed the Board's petition for contempt. In *Tempest*, the court decided the issue of successorship without hesitation. Available precedent leaves the court with three choices; I would follow the *Tempest* court.

Both judicial responsibility and economy to the parties urge that we determine whether Galaxie is FMG's "successor." We should bear in mind that in this instance the administrative body is the accuser and that a finding of contempt is a judicial function. Contempt proceedings may be instituted only by the Board. *Southport*, 315 U.S. at 106 n. 5, 62 S.Ct. at 456 n. 5 (1942), citing *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738. This makes it all the more important to delineate between judge and accuser. We have the Board's expertise as the initiator of this proceeding. We should put the Board to the task of proving its case.

We used the word "successor" in our order of May 1981; we should not ask someone else to define it. By confessing uncertainty, as the court does today, we put in the hands of everyone against whom we rule the power to delay our enforcement by presenting something other than the "clearest" case. The majority does not say what the court should do in the event the Board determines Galaxie is a successor. As was the case in *Ozark Hardwood,* Galaxie may still be free to challenge that finding. I also foresee other, broader issues, relating to contempt, that will need to be referred to a Special Master even after the Board's ruling on successorship.

I would have the court decide the issue of successorship along with any other issues that may attend this proceeding.