Edward R. SWOBODA,
Plaintiff/Appellee,

v.

PALA MINING, INC., Jean Magee as executrix of the estate of William Magee; and Eduard Link, Defendants/Appellants.

No. 84–6278.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1987.

Decided April 14, 1988.

Kennan E. Kaeder, San Diego, Cal., for defendants/appellants.

Michael A. Vanic, Webster, Jones & Agran, Goldman and Vanic, Los Angeles, Cal., for plaintiff/appellee.

Before ALARCON and NELSON, Circuit Judges, and AGUILAR,[*] District Judge.

AGUILAR, District Judge:

# I

## OVERVIEW

This case provides a rare opportunity for judicial analysis of a relatively obscure area of the federal mining laws. For reasons explained below, we affirm the district court's disposition in all respects except on the issue of damages. Because the Special Master's findings with respect to damages (which the district court adopted) were not supported by evidence in the record, we remand solely on the issues of damages for reexamination de novo.

# II

## FACTS

Since 1980,[1] appellee Edward R. Swoboda has owned and operated the Stewart Mine, which is comprised of 19.54 acres in San Diego County. The western boundary of the Stewart Mine lies contiguous to the eastern boundary of the Pala Indian Reservation, which was established by a trust patent issued to the Pala Band of Mission Indians on February 4, 1920 pursuant to the Act of January 12, 1891.

The Stewart Mine was located in 1898. Until the mid–1920's, the claim was worked principally to mine lapidolite. On April 26, 1949, the Department of the Interior granted Swoboda's predecessor-in-interest a mineral patent to the Stewart Mine. Within the boundaries of the Stewart Mine is the apex of a pegmatite dike. Swoboda and his predecessors-in-interest have excavated tunnels in the central part of the dike. A segment of the tunnel network within the pegmatite dike runs below the surface of the Pala Indian Reservation adjacent to the western boundary of the Stewart Mine. On October 5 and 9, 1980, appellant Pala Mining, Inc. ("PMI") excavated and removed earth from the surface of the reservation land directly above Swoboda's tunnel network.

On October 10, Swoboda filed a complaint seeking damages and a temporary and permanent injunctive relief barring PMI from mining, excavating, removing earth or conducting related mining activities on the Pala Indian Reservation above the subsurface mine workings of the Stewart Mine. Swoboda alleged that the excavation and earth removal threatened the destruction or damage to the upper limit, or hanging wall, of the pegmatite dike and other segments of the tunnel network and mine workings through cave-in and collapse, flooding, and fire or explosion as a result of damage to the electrical and gas-operated equipment. Swoboda further alleged that PMI's activities endangered the lives and safety of any miners or other persons present in the tunnel network.

On November 18, 1980, the United States District Court, Southern District of California, issued the requested preliminary injunction. Following discovery, Swoboda filed a motion for summary judgment and PMI filed a cross-motion for summary judgment. On May 17, 1982, the district court denied both motions and appointed a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure ("Fed.R. Civ.P.").

On August 18, 1982, Swoboda filed a Motion for Order Regarding the Legal Effect of the Stewart Mine Patent. The district court determined that the patent for the Stewart Mine conveys title to the pegmatite dike, provided that the dike constitutes a vein in the context of 30 U.S.C. § 26, and that the trust patent for the Pala Indian Reservation does not preclude ownership of the pegmatite dike within the subsurface of the reservation.

On November 8, 1982, after reviewing the relevant depositions, declarations and testimony of witnesses, and after personal-

---

[*] Honorable Robert P. Aguilar, United States District Judge for the Northern District of California, sitting by designation.

1. The record indicates that Swoboda acquired the land in 1968 and reacquired it in 1980.

ly inspecting the Stewart Mine, the Special Master determined that the pegmatite dike is a vein within the meaning of 30 U.S.C. § 26. A hearing regarding damages was set for August 23, 1983, but was continued to October 14, 1983, upon the request of Swoboda. Following the hearing, the Special Master lodged a report of findings of fact and conclusions of law and assessed $35,000 in actual damages and $140,000 in punitive damages against PMI.

PMI objected to the Special Master's findings on the ground that it had no notice of the October 14, 1983 hearing. The district court recommitted the matter to the Special Master for findings on the issue of notice. These findings were issued on December 7, 1983. PMI again objected to the Special Master's report and moved to reopen the evidentiary hearing. On July 11, 1984, after the Special Master had supplemented his report and PMI had filed additional objections, the district court concluded that the findings of fact and conclusions of law in the Special Master's report were not clearly erroneous, with the exception of the punitive damage award, which it reduced from $140,000 to $70,000. Judgment was entered July 11, 1984 and PMI filed a notice of appeal on August 10, 1984.

### III

### ISSUES

(A). Does Swoboda possess extralateral rights to the portion of the pegmatite dike that extends under the Pala Band Reservation?

1. Is the dike a "vein or lode" under 30 U.S.C. § 26?

2. Do the subsurface rights of the Indian reservation preclude the extralateral rights of the Stewart Mine?

(B). Did PMI receive proper notice of the October 4, 1983 evidentiary hearing?

(C). Did the district court err in granting Swoboda actual and punitive damages?

**2.** Although PMI argues that this "apex principle" is disfavored by commentators, it is still the

### IV

### ANALYSIS

A. *Standard of Review*

We review the Special Master's findings of fact for clear error. *See, e.g., NLRB v. FMG Industries,* 820 F.2d 289, 291 (9th Cir.1987); Fed.R.Civ.P. 53(e)(2). The clearly erroneous standard, however, applies only to the Special Master's findings of fact; resolution of any mixed questions of law and fact is subject to de novo review. *United States v. State of Washington,* 730 F.2d 1314, 1317 (9th Cir.1984). A Special Master's conclusions of law receive no deference. *NLRB v. FMG Industries,* 820 F.2d at 291.

B. *Does Swoboda Possess Extralateral Rights to the Pegmatite Dike?*

Under 30 U.S.C. § 26, the owner of a mining claim has the exclusive right of possession and enjoyment not only of the land within the boundary lines of the claim, but also of "all veins, lodges and ledges throughout their entire depth, the top or apex of which lies" within the boundary lines extended downward vertically—even though the veins, lodes or ledges extend outside the boundaries of the claim.[2] *See, e.g., Del Monte Mining and Milling Co. v. Last Chance Mining and Milling Co.,* 171 U.S. 55, 88, 18 S.Ct. 895, 908, 43 L.Ed. 72 (1898); *Silver Surprize, Inc. v. Sunshine Mining Co.,* 15 Wash. App. 1, 547 P.2d 1240, 1244 (1976), *aff'd,* 88 Wash. 2d 64, 558 P.2d 186 (1977) ("extralateral right" is right to follow vein past boundaries of one's own claim). The parties stipulated that the apex of the pegmatite dike is contained within the Stewart Mine's surface boundary lines and that the dike runs below the surface of the Pala Reservation. Therefore, in this case, if the pegmatite dike constitutes a "vein" under § 26, Swoboda has the extralateral right to follow the vein outside the boundaries of the Stewart Mine.

controlling federal law under 30 U.S.C. § 26.

### 1. Is the Dike a "Vein"?

 The Special Master explicitly determined that the pegmatite dike is a "vein" within the meaning of 30 U.S.C. § 26. The panel reviews this factual determination under the clearly erroneous standard, unless the legal concept of "vein" applied to the facts before the Special Master was incorrect as a matter of law. See generally *Iron Silver Mining Co. v. Cheesman*, 116 U.S. 529, 6 S.Ct. 481, 29 L.Ed. 712 (1886); *Titanium Actynite Ind. v. McLennan*, 272 F.2d 667, 669 (10th Cir.1959) (following *Iron Silver*).

In 1886, the Supreme Court opined: "What constitutes a lode or vein of mineral matter has been no easy thing to define." *Iron Silver Mining Co. v. Cheesman*, 116 U.S. 529, 533, 6 S.Ct. 481, 483, 29 L.Ed. 712 (1886). The Court explicitly approved definitions of a vein offered by Circuit Courts of Appeals in *Eureka Case*, 4 Sawyer 302, 311 ("We are of opinion, therefore, that the term as used in the acts of Congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock."), and in *Stevens v. Williams*, 1 McCrary 480, 488 ("[A] load or vein is a body of mineral, or mineral body of rock, within defined boundaries, in the general mass of the mountain."). The Court also approved [3] of the district judge's jury instruction which stated that "a lode or vein is a body of mineral or mineral-bearing rock, within defined boundaries in the general mass of the mountain.... [T]he elements are the body of mineral or mineral-bearing rock and the boundaries; with either of these things well established, very slight evidence may be accepted as to the existence of the other," *Iron Silver*, 116 U.S. at 536, 6 S.Ct. at 484.

The Special Master used the *Iron Silver* definition to determine that the pegmatite dike was indeed a vein. He found that the pegmatite dike consists of mineralized rock that contains many different commercially valuable minerals. As the Special Master

noted, the "key element" is the mineralization of the pegmatite dike. This "key element" analysis conforms to the definitions set forth in *Iron Silver*: whether the body of rock in question is a "body of mineral or mineral-bearing rock." As Swoboda claims, and the record indicates, the dike is a vein because it is mineral-bearing rock within well-defined boundaries. The parties stipulated that the dike has boundaries which are well-defined from, and traceable through, the surrounding rock. This stipulation of fact would bring the dike within the definition of a vein proffered by the Circuit Court judges cited with approval in *Iron Silver*, 116 U.S. at 534, 6 S.Ct. at 483. Thus, we conclude that the Special Master correctly applied the relevant law and the record indicates that his factual findings were not clearly erroneous.

PMI also contends that Swoboda's extralateral claim is defeated because the pegmatite dike does not contain a continuous, unbroken body of commercially viable minerals. Continuity is a question of fact. See *Iron Silver*, 161 U.S. at 532, 537, 6 S.Ct. at 482, 484 (approving jury instructions leaving determination of continuity to trier of fact). If the finding that the dike is a "vein" is not clearly erroneous, then this contention falls, because the parties stipulated that: "The subject pegmatite dike extends without interruption in its downward course to its termination at an unknown depth." The fact that the valuable minerals themselves do not occur continuously would seem to be irrelevant to the inquiry whether the mineral-bearing rock is continuous, and here the parties stipulated to the continuity of the mineral-bearing rock. Because this latter type of continuity is all that is required by *Iron Silver* to support Swoboda's extralateral claim, his claim withstands this attack.

### 2. The Indian Reservation Mineral Rights Are Not Absolute

 PMI contends that Indian tribal lands are exempt from the assertion of

---

**3.** "We are not able to see how the judge who presided at the trial of the case could have better discharged this delicate task [defining a

vein] than he has in the charge before us to which the exceptions are taken." *Iron Silver*, 116 U.S. at 535, 6 S.Ct. at 484.

extralateral rights, but does not supply citations for this precise principle. The Mission Indians Relief Act which gave the Pala Mission Indians the land patent to their reservation provided in part "that no patent shall embrace any tract or tracts to which existing valid rights have attached in favor of any person under any of the United States laws providing for the disposition of the public domain." Act of January 12, 1891, 26 Stat. 712. Swoboda's predecessors-in-interest located the Stewart Mine in 1898; the Pala Indians did not receive the patent for the reservation land until 1920. Swoboda's grant conveyed to his predecessors-in interest:

> [T]he said mining premises hereinbefore described ... and all that portion of the said vein, lode, or ledge, and all other veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside the surface boundary lines of said granted premises in said survey extended downward vertically, although such veins, lodes, or ledges in their downward course may so far depart from a perpendicular as to extend outside the vertical lines of said premises....

*Supplemental Excerpts of Record* ("Supp. ER."), Tab 121, Exh. A at 2.

The Indian trust patent of February 4, 1920, conveyed the land to the Pala Band "subject to all the restrictions and conditions contained in the said Act of Congress of January 12, 1891." *Supp. ER*, Tab 121, Exh. B at 3. Hence, the land patent itself incorporated by reference the condition that "no patent shall embrace any tract or tracts to which existing valid rights have attached in favor of any person under any of the United States laws providing for the disposition of the public domain...." [4] Consequently, the district court correctly

determined that the trust patent for the Pala Indian Reservation does not preclude ownership by Swoboda of extralateral rights in the pegmatite dike vein within the surface of the reservation. The general principle that Indians own the mineral rights to their reservation land does not change this result.

### C. *Did PMI Receive Proper Notice of the Evidentiary Hearing?*

■ PMI contends that it was denied due process because it claims it did not receive actual notice of an evidentiary hearing on the issue of damages held October 14, 1983. The hearing had been continued from August 23, 1983. Despite Swoboda's attorney's statement that notices were mailed to the last known addresses of PMI and were not returned as undeliverable by the Postal Service, PMI claims never to have received the notices. The magistrate made the following findings of fact regarding service of the notice:

> On August 5, 1983, Swoboda duly served by mail pursuant to Federal Rule of Civil Procedure 5(b), a Notice of Hearing re Trespass Damages, stating that such hearing was scheduled to proceed on August 23, 1983. On August 22, 1983, Swoboda duly served by mail pursuant to Rule 5(b) a Notice of Continuance of Hearing re Trespass Damages, stating that such hearing had been scheduled on October 14, 1983, on which date the hearing took place.

*Excerpt of Record* ("ER"), Tab 171 at 2. The magistrate then concluded that PMI had been properly served with notice of the evidentiary hearing on October 14, 1983.

PMI argues that Federal Rule of Civil Procedure 77(d) requires the clerk of court, rather than a party, to serve notice [5] and thus, PMI was not properly served and its

---

4. The Secretary of the Interior, in an appeal by one of Swoboda's predecessors-in-interest, Blanche C. Crane, specifically ruled that the Indian trust patent excluded the Stewart Mine claim. Citing *Pechanga Band of Mission Indians v. Kacor Realty, Inc.*, 680 F.2d 71, 72–73 (9th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), Swoboda argues this determination is binding on this court. We need not reach this issue, however.

5. Rule 77(d) provides:
 Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner

right to due process was violated. Swoboda responds that service under Federal Rule of Civil Procedure 5(b) was effected, and that this notice satisfied due process requirements.[6]

As is clear from the language of the two provisions, Rule 77(d) applies only to the entry of an order or judgment. Rule 5 applies to "filing of pleadings and other papers" such as a notice of evidentiary hearing. Rule 77 does not control. PMI's due process rights were not violated.

D. *Were the Special Masters' Damage Findings Clearly Erroneous?*

■ We find the Special Master's findings of fact with respect to the issue of damages to be clearly erroneous. Although the Special Master heard testimony on the subject of damages, there is not an adequate basis for his damage findings in the record. For example, the Special Master concluded:

> The excavation and earth removal by Link, Magee and PMI exposed and included removal of and damage to, a portion of the upper limit, or hanging wall, of the pegmatite dike, threatened the destruction and damage of it and other segments of the tunnel network and mine workings through cave-in and collapse, flooding and fire or explosion as a result of damage to electrical and gas-operated equipment. It further endangered the lives and safety of any miners or other persons present in the tunnel network and mine workings.

*ER*, Tab 158 at 3.

Despite the seriousness of this determination, the Special Master has not supported this finding with any references to testimony, deposition transcripts, or material evidence. Similarly, several of the Special Master's findings in paragraphs 8–16 of his "Amended Findings of Fact" lack evidentiary support, especially paragraphs 9, 10, 13, 15 and 16. Due to the lack of support in the record, we find that the Special Master's findings of fact with respect to damages to be clearly erroneous. In light of appellants' offer of several pieces of evidence which call into question the accuracy of the Special Master's findings, we remand solely the entire issue of damages to the district court for reconsideration. In reviewing the issue de novo, the district court is instructed to allow appellants an opportunity to offer testimony and present evidence in support of their position.

## V.

## CONCLUSION

The issue of damages is REMANDED to the district court for reconsideration de novo. In all other respects the judgment of the district court is AFFIRMED.

provided in Rule 5 for the service of papers. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

6. Rule 5(b) provides:
 Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. Service by mail is complete upon mailing.