DesFosses v. Shumway, et al.      CV-97-625-B    12/1/00
                UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW HAMPSHIRE


Claire DesFosses, et al.

     v.                                    Civil No. 97-625-B
                                           Opinion No. 2000DNH253
Donald Shumway, in his official
capacity as Commissioner of the
New Hampshire Department of Health
and Human Services, et al.



                      MEMORANDUM AND ORDER


     After securing a settlement in this class action, plaintiffs

filed a motion for attorney's fees, pursuant to Federal Rule of

Civil Procedure 54(d)(2)(B) and the Civil Rights Attorney's Fee

Award Act, 42 U.S.C. § 1988.  With the parties' agreement, I

appointed a special master, David A. Garfunkel, and directed him

to file a report recommending a disposition of the state's

challenge to the fee request.  The special master issued his

Report and Recommendation on October 11, 2000.  Before me are the

parties' objections to the report.  After careful consideration

of the relevant documents, I adopt all of the special master's

recommendations except his recommendation that plaintiffs should

be fully compensated for work that their attorneys performed on related state court litigation and his recommendation that plaintiffs should receive a 50% fee enhancement. The total amount of attorney's fees and expenses that plaintiffs are entitled to after these modifications is $230,421.85.

## I. **BACKGROUND**[1]

This case involved a class action challenge of the State of New Hampshire's Medicaid recovery policies and practices. Plaintiffs challenged: (1) the state's practice of filing Notices of Lien, after a Medicaid recipient's death, on the real estate once owned by the Medicaid recipient; (2) the state's practice of seeking recovery of the Medicaid recipient's debt from the estate of a surviving spouse; and (3) the state's failure to create rules for waiving Medicaid recovery on the basis of undue hardship.

---

[1] Unless otherwise noted, I take the facts from the Special Master's Report, (Doc. no. 61), and the Plaintiffs' Offer of Proof in Support of their Motion for Attorney's Fees, (Doc. no. 54).

The named plaintiffs initially filed this action in Rockingham County Superior Court. The state court suit raised the same claims as the federal action, including violations of: (1) the state and federal constitutions; (2) federal Medicaid law, 42 U.S.C. §§ 1396a(a)(18), 1396p; and (3) 42 U.S.C. § 1983. The superior court dismissed the complaint, finding that it failed to state a claim upon which relief could be granted. Rather than challenging this ruling through an appeal to the New Hampshire Supreme Court, plaintiffs obtained defendants' consent to a motion for voluntary nonsuit without prejudice. The state court ultimately allowed the voluntary nonsuit and thereby effectively vacated its earlier order dismissing the complaint for failure to state a claim.

Plaintiffs filed their complaint in this court on December 14, 1997. The parties ultimately settled the case and filed their proposed class action settlement agreement on July 20, 1999. Plaintiffs achieved all their settlement goals including: (1) the enactment of prospective changes to the state's Medicaid

recovery practices and policies; (2) the identification of all class members; (3) the reimbursement of monies that the state incorrectly recovered including the payment of interest; (4) the release of improper liens; (5) the preservation of state court claims for potentially time-barred federal claims; (6) the protection of class members during the implementation phase of the settlement; and (7) the establishment of rules creating an undue hardship waiver for Medicaid recovery. The parties have stipulated that the economic value of the settlement is in excess of $37,567,193, including over $7,000,000 in actual reimbursements to the class.

The defendants agreed as part of the settlement that the plaintiffs are entitled to reasonable attorney's fees. After holding a hearing, the special master issued a report recommending that the plaintiffs be awarded fees and expenses in the amount of $339,248.35. Defendants challenge this determination.

## II. **STANDARD OF REVIEW**

In issuing this Memorandum and Order, I accept the special master's factual findings unless they are clearly erroneous. See Fed. R. Civ. P. 53(e)(2). I review his legal conclusions, however, including his determinations of mixed questions of law and fact, de novo. See Stauble v. Warrob, Inc., 977 F.2d 690, 697 (1st Cir. 1992) (legal conclusions); Swoboda v. Pala Mining, Inc., 844 F.2d 654, 656 (9th Cir. 1988) (mixed questions of law and fact).

## III. **DISCUSSION**

The defendants challenge the special master's Report and Recommendation because they claim that: (1) the hourly rates charged by plaintiffs' counsel are too high and should be reduced; (2) the work expended on the fees case should be compensated at a reduced rate; (3) plaintiffs' request for compensation for outside counsel should be denied in its entirety; (4) the hours claimed are excessive and the billing

records suggest duplicative work; (5) the time spent preparing for legislative hearings on Senate Bill 311 should not be compensated because it was not work on the litigation; (6) the time spent on the state court litigation is not compensable; and (7) the special master improperly enhanced the fee award by 50%.

The special master has produced a very thorough and well-reasoned report analyzing the same issues raised by the defendants' current objections. After reviewing the defendants' objections, the transcript of the hearing before the special master, the special master's report, and the relevant case law, I adopt his recommendations pertaining to the first five objections.[2] I disagree, however, with both his recommendation

---

[2] The special master determined that the work performed by outside counsel in this case is compensable. See Special Master's Report (Doc. no. 61) at 14-16. Plaintiffs make a limited objection to this recommendation because they are concerned that the report could be read to suggest that outside counsel should receive their compensation as a separate award from the court. I do not share their concern. The special master included the time expended by outside counsel in his calculation of the attorney's fees to which the plaintiffs are entitled. See id. at Schedule 1. The special master's inclusion of fees incurred by outside counsel in his calculation of plaintiffs' fee award makes clear his intention that the plaintiffs should receive the entire attorney's fee award and then compensate outside counsel if they have not already been paid.

that work performed on the state court litigation is fully compensable and his recommendation that the fee award should be enhanced.  I address these two issues below.

## A.  Prior State Court Litigation

The special master decided that all of the work performed on the state court litigation was compensable.  See Special Master's Report (Doc. no. 61) at 16-18.  Plaintiffs request compensation for the time that their attorneys spent during the state court litigation on: (1) meeting with clients; (2) negotiating on behalf of the clients; (3) drafting various court documents; and (4) working on the litigation after the initial dismissal that led to the voluntary nonsuit.  Mem. Attached to Pls.' Mot. for Att'y's Fees (Doc. no. 32) at 8; Tr. of Hearing (Doc. no. 59) at 61-62.

Counsel's work interviewing clients, negotiating on behalf of clients, and drafting responses to defendants' initial motions

should be compensated because it constitutes "discrete work that was both useful and of a type ordinarily necessary to advance ... litigation to the stage it reached." Schneider v. Colegio de Abogados de P.R., 187 F.3d 30, 33 (1st Cir. 1999) (quoting Webb v. Board of Educ., 471 U.S. 234, 243 (1985)). In determining what work is "useful and ordinarily necessary," courts have been guided by Justice Brennan's concurrence in Webb, where he states that the work must have "significantly contributed to the success of the federal court outcome and eliminated the need for work that otherwise would have been required in connection with the litigation." 471 U.S. at 253 (Brennan, J., concurring); see Schneider, 187 F.3d at 46 n.29 (describing cases applying Justice Brennan's concurrence); McDonald v. Armontrout, 860 F.2d 1456, 1461-62 (8th Cir. 1988) (holding that research and investigative work for a habeas case that was later utilized in a § 1983 action was compensable because it "obviated the need for comparable work" in the § 1983 action). Counsel's initial work in the state court litigation qualifies for compensation under this standard

because it both reduced the need for comparable work in the federal action and played a role in the parties' decision to settle the action.

Time spent by plaintiffs' counsel in evaluating the claim preclusion issue and in obtaining the voluntary nonsuit, however, should not be compensated. While these time charges may have been necessary to the success of the federal action in the sense that it may have been barred by the doctrine of claim preclusion if plaintiffs had not obtained a voluntary nonsuit of the state court action, a nonsuit became necessary only because counsel elected to initially file their complaint in state court.[3] The record contains no evidence to suggest that counsel would have incurred similar time charges if they had initially pursued their case in federal court. Therefore, work performed on the claim preclusion issue and the voluntary nonsuit dismissal should not

_____

[3] This case is thus distinguishable from Stathos v. Bowden, 728 F.2d 15, 22 (1st Cir. 1984), where the plaintiffs were compelled to defend a state court action initiated by the defendants in an effort to thwart plaintiffs' anticipated federal action.

be compensated because it did not "eliminate the need for work that otherwise would have been required in connection with the [federal] litigation." Webb, 471 U.S. at 253 (Brennan, J., concurring).

After excluding time spent on the claim preclusion issue and the voluntary nonsuit dismissal, I find that 4.7 hours of John Bomster's time (at $210/hour), 2 hours of John Bomster's travel time (at $105/hour), and 3.5 hours of Ellen Gordon's time (at $130/hour) should not be compensated.[4]  The recommended fee award

_____

[4] These figures are broken down in the attorneys' timesheets as follows:

| John Bomster | 2.5 hours on 10/10/96 | Conference at Manchester on litigation issues & strategy |
| | 2 hours on 11/19/96 | Research Motions to Dismiss, Motions to Amend, res judicata re: hearing |
| | 0.2 hours on 11/22/96 | Telcon J. Tobin re: implications of voluntary nonsuit without prejudice |
| | 2 hours on 10/10/96 | Travel Time |
| Ellen Gordon | 2.5 hours on 10/10/96 | Meeting in Manchester w/ J. Bomster, etc. re: litigation strategies |
| | 1.0 hours on 11/23/96 | Draft Motion for Voluntary Nonsuit |

therefore must be reduced by $1,652.00.

## B.     Lodestar Enhancement

The special master determined that the plaintiffs are entitled to a 50% enhancement of the lodestar amount[5] because of the "sweeping success" of the lawsuit.  In support of this conclusion, he noted both that the stipulated value of the settlement was in excess of $37 million and that the plaintiffs succeeded in every one of their objectives.  While I agree with the special master that plaintiffs' counsel did an outstanding job of representing the interests of the class, I decline to

---

List of Addenda to Pls.' Mot. for Att'y's Fees (Doc. no. 32) at Addendum 10, 13; Revised Exhibit (Doc. no. 60) at Hearing Exhibit 4.

[5]  The lodestar amount is the amount determined by multiplying the number of hours expended in the litigation by a reasonable hourly rate.  See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 788-89 (1989).

order any enhancement of the lodestar amount because I am satisfied that this is not one of the truly exceptional cases where the reasonable value of the services performed by counsel is not reflected in the lodestar amount.

The Supreme Court has determined that the lodestar amount is "'presumed to be the reasonable fee' to which counsel is entitled." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) (quoting Blum v. Stenson, 465 U.S. 886, 897 (1984)). While the court has left open the possibility that an upward adjustment of the lodestar amount may be warranted in "rare and exceptional" cases, any upward deviation must be "supported by both 'specific evidence' on the record and detailed findings by the lower courts." Id. at 565 (quoting Blum, 465 U.S. at 898-901); see also Lipsett v. Blanco, 975 F.2d 934, 942 (1st Cir. 1992) (noting that the exception allowing enhancement to a lodestar amount is a "tiny one"). In commenting specifically on the issue of when an enhancement of the lodestar amount may be justified based on superior

performance, the Court has stated that:

> In short, the lodestar figure includes most,
> if not all, of the relevant factors
> constituting a "reasonable" attorney's fee
> and it is unnecessary to enhance the fee for
> superior performance in order to serve the
> statutory purpose of enabling plaintiffs to
> secure legal assistance.

Delaware Valley, 478 U.S. at 566.

I decline to award plaintiffs an enhancement to the lodestar amount because the value of their attorneys' legal services is fully reflected in their hourly rates and the number of hours they expended: (1) Ann Butenhof- $150/hour for 574.7 hours; (2) Elliot Berry- $175/hour for 163.1 hours; (3) John Bomster- $210/hour for 53.0 hours and $225/hour for 76.8 hours, etc. See Special Master's Report (Doc. no. 61) at Schedule 1. These are current rates that adequately represent the quality of the lawyering and the results obtained. The Supreme Court has observed that, "when an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results

commensurate with his skill and his client's interest." <u>Delaware Valley</u>, 478 U.S. at 565. The plaintiffs' attorneys in this case did exactly that. Therefore, the lodestar figure takes into account the results obtained and adequately compensates the attorneys in this case. <u>See</u> <u>id.</u> at 565-66.

Because an enhancement is not warranted, I must adjust the special master's recommended award to eliminate the enhancement. Without the enhancement, the attorney's fees consist of the lodestar figure, $229,859.00. <u>See</u> Special Master's Report (Doc. no. 61) at Schedule 3. This figure must be reduced by the $1,652.00 that pertained to work performed on the claim preclusion issue and the voluntary nonsuit and increased by $2,214.85 for expenses. <u>See</u> <u>id.</u> at 29. Therefore, the final amount of attorney's fees and expenses to be awarded in this case is $230,421.85.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I adopt the special master's

recommendations with the noted exceptions.  Attorney's fees and expenses are to be awarded to the plaintiffs in the amount of $230,421.85.  I do not rule on any remaining motions regarding attorney's fees, as they are now moot.  I direct that the clerk enter judgment in accordance with this order.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

December 1, 2000

cc:  Ann N. Butenhof, Esq.
     Daniel J. Mullen, Esq.
     David A. Garfunkel, Esq.