974 F.2d 1343
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Samuel RUDNICK and Pearl Rudnick, Creditors-Appellees,
v.
Ben W. ALLUSTIARTE, and Linda M. Allustiarte, Debtors-Appellants.
In re Ben W. ALLUSTIARTE and Linda M. Allustiarte, Debtors.
Samuel RUDNICK and Pearl Rudnick, Creditors-Appellants,
v.
Ben W. ALLUSTIARTE, and Linda M. Allustiarte, Debtors-Appellees.
 Nos. 88-15368, 88-15369.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 14, 1992.
Decided Aug. 31, 1992.
 
 1
 Appeal from the United States District Court for the Eastern District of California, No. CV-81-0010-RAR; Raul A. Ramirez, District Judge, Presiding.
 
 
 2
 E.D.Cal.
 
 
 3
 AFFIRMED.
 
 
 4
 Before FLETCHER and T.G. NELSON, Circuit Judges, and WILSON,* District Judge.
 
 
 5
 MEMORANDUM**
 
 
 6
 Ben and Linda Allustiarte, debtors in a Chapter XII bankruptcy action, appeal the district court's adoption of a Special Master's Report. The report was an accounting of the rights of the Allustiartes and Samuel and Pearl Rudnick to the distribution of any proceeds from the sale of "Muzzy Ranch," a 4,500 acre plot of pasture land in Solano County, California. We affirm.
 
 I. BACKGROUND
 
 7
 This appeal is rooted in an intractable feud between two couples, the Allustiartes and the Rudnicks, that dates back over twenty-five years and that revolves largely around the parcel of land known as "Muzzy Ranch." Most of the details of the feud relevant to this appeal are set out in an earlier published opinion and need not be restated here, see In re Allustiarte, 786 F.2d 910, 912-13 (9th Cir.1986); the following brief outline will suffice for our present purposes.
 
 
 8
 The Allustiartes and the Rudnicks bought Muzzy Ranch in 1963 as a joint business venture of sorts. The two couples were tenants-in-common, each owning a half interest in the ranch. By March 29, 1965, however, the business relationship between the two couples had soured, and their partnership came to an end. On August 15, 1979, the Allustiartes filed the present Chapter XII action,[1] whereupon bankruptcy court became the theatre of operations for a pitched battle between the two couples over Muzzy Ranch.
 
 
 9
 In one noteworthy phase of the bankruptcy proceedings, the Allustiartes' possession of Muzzy Ranch came to an end when on December 31, 1980, the bankruptcy court ordered two of the Allustiartes' sons divested from possession of the ranch.
 
 
 10
 In another phase--the one from which the present appeal stems--the bankruptcy court, over the Allustiartes' strenuous objections, held that the Rudnicks were the owners of one-half interest in the ranch. This decision, entered on August 29, 1980, was affirmed by the district court. Rather than pursue an appeal of the district court judgment, the Allustiartes in July 1983 filed a complaint in bankruptcy court for an accounting. Following the recommendation of the bankruptcy court, the district court appointed a Special Master on March 16, 1984 to conduct hearings and prepare an accounting of the Allustiartes' and the Rudnicks' interest in Muzzy Ranch.
 
 
 11
 After lengthy hearings and a review of more than 700 exhibits, the Special Master submitted a thirty-one page report to the bankruptcy court. On July 22, 1988, the bankruptcy court filed the reports' findings and recommended them to the district court. On July 28, 1988 the district court adopted the report in full. The Allustiartes appeal.[2]
 
 II. DISCUSSION
 
 12
 The Allustiartes first claim that the Rudnicks have no interest in Muzzy Ranch. If nothing else, this claim is barred by the principle of collateral estoppel. In the early 1970s, the Allustiartes and the Rudnicks negotiated a settlement whereby, among other things, the Allustiartes were to receive a quitclaim deed from the Rudnicks in exchange for monetary payment. However, while the quitclaim deed was delivered as agreed, the Allustiartes only made partial payment of the amount required of them. By its own terms, the settlement required that the entire settlement was to be carried out or its terms would be void. In a decision entered August 29, 1980, the bankruptcy court found that the Allustiartes failed to perform the settlement agreement and specifically ordered the Allustiartes' lawyer to "Reconvey to Samuel H. Rudnick and Pearl Rudnick all right, title, and interest in the real property commonly known as the 'Muzzy Ranch,' which was conveyed him by Samuel H. Rudnick and Pearl Rudnick by the quitclaim deed hereinafter mentioned." The Allustiartes' lawyer complied. The Allustiartes then appealed the court's ruling, but later voluntarily dismissed the appeal. The order became final after the expiration of the appeal period. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). The Allustiartes cannot now be permitted to raise on appeal an issue that was decided over a decade ago.
 
 
 13
 The Allustiartes next claim that the Rudnicks should be held liable for a $668,965.70 Deed of Trust issued for the development of Muzzy Ranch. That deed was executed on August 1, 1966, and recorded on December 8, 1966. In a subsequent adversary proceeding, denominated Adversary File "A", the bankruptcy court and the district court adopted a conclusion of law that the deed "does not secure any valid debt of the Debtors to the Allustiarte Family Trusts and any lien established against the Muzzy Ranch is consequently void and unenforceable." We have already held in an earlier, separate appeal filed by the Allustiartes that the promissory notes executed by the Allustiartes and secured by the Muzzy Ranch are "unenforceable." In re Allustiarte, 786 F.2d at 916. This conclusion has preclusive effect on the Allustiartes' most recent incantation of this claim. Indeed, it borders on sanctionable conduct, even for pro se litigants like the Allustiartes, to raise the claim again.
 
 
 14
 Finally, the Allustiartes take issue with three specific findings of fact in the Special Master's Report. A Special Master's findings of fact are reviewed for clear error. Swoboda v. Pala Min., Inc., 844 F.2d 654, 656 (9th Cir.1988).
 
 
 15
 Each one of the Allustiartes' challenges is seriously deficient. The Allustiartes first object to the Special Master's finding that "the sources of funds to pay for the development of the Muzzy Ranch that occurred after March 29, 1965, other than the above-mentioned work of H.E. Graf, Inc., was the income generated from that ranch during the same period."[3] Report of Special Master, Finding of Fact # 33 However, all the Allustiartes offer in opposition to this finding is evidence of expenditures made to improve Muzzy Ranch. The Allustiartes offer neither evidence nor argument that the improvements they list were not paid for from the ranch's income. As such, the Allustiartes' argument fails to cast any doubt on the Special Master's finding, and there is therefore simply no basis for concluding that the Special Master committed clear error.
 
 
 16
 The Allustiartes also object to the Special Master's finding that "there is no credible evidence which established that [the Rudnicks] share[ ] any liability in excess of that noted in findings number 21 and 40 for alleged obligations represented by claim No. 1 (Bridenbaugh)." Report of Special Master, Finding of Fact # 56 The Allustiartes argue that the Rudnicks do share liability other than that noted in findings number 21 and 40. The Allustiartes claim that they "borrowed from the Bridenbaughs, friends and creditors ... on many occasions a total of $531,357.81 in order to pay off thirteen notices of defaults and foreclosures,"[4] and that the Rudnicks should be liable for half of that debt. The trouble with this argument is that the Allustiartes do not identify any evidence that establishes the Rudnick's liability for this alleged debt, and we cannot therefore say that there was clear error in the Special Master's finding.
 
 
 17
 Finally, the Allustiartes appear to challenge the Special Master's finding that $90,000 of the downpayment for the ranch "was in fact monies borrowed or transferred from the Rudnick businesses for which Allustiarte and Rudnick were equally liable." Report of Special Master, Finding of Fact # 11 As before, the Allustiartes offer no evidence whatsoever to defeat this finding; it was therefore not clearly erroneous.
 
 III. CONCLUSION
 
 18
 For the foregoing reasons, the district court's adoption of the Special Master's Report is AFFIRMED.
 
 
 
 *
 The Honorable Stephen V. Wilson, District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In 1974, the Allustiartes had filed an original action under Chapter XII of the now repealed Bankruptcy Act of 1898. That proceeding was dismissed in 1975, but the Allustiartes appealed, and the Order of Dismissal was not final until August 14, 1979. The present bankruptcy action was filed on the next day
 
 
 [2]
 The Rudnicks originally cross-appealed. At oral argument on May 14, 1992, however, they withdrew their appeal, and there is therefore no need to address it
 
 
 [3]
 Earlier in his report, the Special Master had found that H.E. Graf Inc. had in 1976 done certain "development work" on portions of the Muzzy Ranch at a cost of $400,800
 
 
 [4]
 John and Helen Bridenbaugh were apparently "personal friends" of the Allustiartes